HAMMON HERRINGTON, RESPONDENT, *v.* CATHARINE WINN, AS EXECUTRIX OF WALTER W. WINN, DECEASED, APPELLANT.

*Executors and administrators — personal transaction with decedent — entries in a book — proof by an executrix, on cross-examination, of the physical condition of her testator — the claimant cannot rebut it — information necessary to enable a physician to prescribe for a patient.*

Upon the reference of a claim against the executrix of one Winn, referred under the statute, the claimant was allowed to testify that, in his presence and that of the decedent, certain figures, showing the price and number of certain cords of wood in issue in the suit, were entered in a book by Winn's son by his direction, and that the claimant himself, in the presence of Winn and his son, made the same entries on a paper, and that they agreed with figures in a book of the claimant. The book of Winn, which had been produced on notice, and the other book which belonged to the plaintiff, were then admitted as evidence.

*Held,* that the evidence related to a personal transaction had by the witness with Winn, and was incompetent under the Code of Civil Procedure (§ 829).

The claimant called the executrix as a witness, and examined her as to this transaction, which she denied substantially. Her own counsel, on cross-examination, inquired of her as to the physical condition of Winn at the time of this transaction. Then the plaintiff was recalled and was asked on his own behalf as to the condition of the decedent.

*Held,* that this evidence related to a fact forming part of the transaction; was material upon the question whether the transaction ever took place, and was objectionable under the Code of Civil Procedure (§ 829).

That such testimony upon the defendant's part, being brought out properly upon the cross-examination of the plaintiff's witness, did not entitle the plaintiff to testify afterwards as to the physical condition of Winn.

A physician, not his family physician, attended Winn once. He was asked by defendant whether upon that day Winn was conscious or unconscious. Decision upon this question was reserved. He was recalled and asked whether the information he obtained on that day was necessary to enable him to prescribe professionally. This question was excluded, and finally the physician's testimony was stricken out.

*Held,* that the latter question was proper within section 834 of the Code of Civil Procedure.

That this was so whether it ultimately appeared that the witness was or was not shown to be competent to testify to Winn's physical condition on that day.

APPEAL by the defendant Catharine Winn, as executrix of Walter W. Winn, deceased, from an order confirming the report of a referee,.

entered in the clerk's office of Rensselaer county on the 1st day of October, 1890; and from a judgment, entered thereon in said office, in favor of the plaintiff, after a trial had before a referee in Rensselaer county.

*J. E. Hoag* and *R. A. Parmenter*, for the appellant.

*James G. Patton* and *Frank S. Black*, for the respondent.

LEARNED, P. J.:

This is a claim against the estate of Walter W. Winn, referred under the statute. The referee reported in favor of the plaintiff, and the defendant appeals.

Two questions are raised: The first, that the referee admitted evidence inadmissible under section 829, Code of Civil Procedure; the second, that he excluded evidence under section 834 which was admissible.

The plaintiff was called on his own behalf. A memorandum-book of the decedent was produced by defendant. The plaintiff testified that he saw the book in Winn's house, and that Winn and Fred Winn, the son, were present; that he saw pages 16 and 17, and saw the figures put on those pages; that Fred Winn put them on, and that his father was present; that he also saw a "blank leaf," paged 213 and 214; that he himself put the figures on that paper in presence of Winn and his son Fred; that Fred and plaintiff at that time compared the figures on pages 16 and 17 with those on plaintiff's book, the number of cords of wood, and how much they came to; that Fred Winn read the figures off aloud; that Winn directed Fred to put the figures down in the book in plaintiff's presence (that book being plaintiff's book); that on comparing the two books, that is, plaintiff's book, and defendant's book and the "blank leaf," the figures corresponded. The two books were then given in evidence by plaintiff. The referee found that these entries, specifying them, were made by Fred Winn in the presence and by the direction of the testator, and were read aloud by his said son in his presence.

The case shows that some of the evidence was taken subject to objection, and especially the question whether Winn directed Fred to put down these figures in plaintiff's presence, was objected to as

a transaction between deceased and the witness; the objection was overruled and defendant excepted. (*Church* v. *Howard*, 79 N. Y., 415.) The plaintiff insists that, if this testimony was objectionable when given, the objection was overruled by subsequent testimony given by defendant. We see nothing to justify this position. The cases cited by the plaintiff do not sustain it. The plaintiff had himself called the defendant as a witness, and had examined her as to the examining of accounts above referred to. She denied that it had taken place. This did not make the plaintiff competent to testify to the transaction. And after plaintiff had so testified her denial of such a transaction could not make his testimony competent if it had been incompetent before.

We are obliged, therefore, to inquire whether the plaintiff was competent to testify as he did. This was a personal transaction between plaintiff and the testator. The business was the examining and adjusting of accounts. That the testator acted through his son Fred did not make the affair any the less a transaction with the plaintiff. The case of *Cary* v. *White* (59 N. Y., 336) is questioned in *Matter of Eysaman* (113 N. Y., 62, at 73.) But even that case does not sustain the ruling here. And more recent cases condemn it. (See, in addition to the case last cited, *Holcomb* v. *Holcomb*, 95 N. Y., 316; *In Matter of Dunham*, 31 N. Y. St. Rep., 858.) The object of the testimony was to show that testator stated or acknowledged the amounts as correct. And whether the plaintiff testified to this in direct words or testified that the testator told his son to put down the figures after Fred had read them aloud, the same result is obtained and the statute is equally violated.

After the plaintiff had examined Mrs. Winn she was cross-examined by her own counsel as to the condition of the testator at the time of the alleged transaction. Then the plaintiff was recalled and was asked on his own behalf as to the condition of the testator. This was objected to under section 829, but the evidence was admitted. Now, Mrs. Winn's testimony related to the same transaction as to which she had been called by the plaintiff. The testator's condition on the day of the alleged transaction was material on the question whether the transaction took place. She was entitled to give the testimony. (*Nay* v. *Curley*, 113 N. Y., 575.) The question then arises, did this permit the plaintiff to testify as to testator's condition.

We think not. Mrs. Winn had not testified voluntarily. She came on the stand as plaintiff's witness. She was, therefore, at liberty, without thereby prejudicing her own position, to testify to all the facts forming a part of the transaction. She would be much prejudiced if she could not do this without making the plaintiff competent, where, by section 829, he would be incompetent. And the condition of Winn at the time of the transaction was a fact forming part of the transaction itself.

Another question arises as to the exclusion of testimony. of Dr. Garland. He was a physician and a friend of testator's. He was not his family physician. But he did attend him the twenty-second of December. He was called as a witness for defendant and testified as to the unconsciousness and consciousness of testator.

The plaintiff moved to strike out this testimony. The referee reserved his decision. Afterwards the defendant recalled the doctor and asked him whether the information he obtained on the twenty-second of December was necessary in order to enable him to prescribe professionally; also whether he obtained any information that day which was necessary, etc. Defendant also offered to show by the doctor that the testator's condition was such that any person of ordinary intelligence could understand it as well as a physician. These questions were objected to and excluded. And finally the referee struck out the doctor's testimony. It is not necessary to repeat section 834. *People* v. *Schuyler* (106 N. Y. 298, at 304) cites approvingly *Edington* v. *Ætna Life Insurance Company* (77 id., 564) and holds that to exclude the testimony of the physician the party must show, among other things, that the information acquired by the physician was such as was necessary to enable him to act in his professional capacity. Under these decisions we do not see why these questions were not proper. Whether it would finally appear that the physician could or could not testify as to the testator's condition is another matter. But he should have been allowed to explain as to the nature of the information. The decisions on this section are not entirely clear. And, indeed, it is not easy to draw the line between information obtained by a physician's professional observation and such as would be plain to every intelligent observer, as suggested in the *Edington Case.* But these questions excluded might have thrown some light on the

nature of the information obtained by the doctor, and might, perhaps, have justified its retention.

The judgment should be reversed, referee discharged, new trial granted, costs to abide event.

LANDON, J., concurred; MAYHAM, J., not acting.

Judgment reversed, new trial granted, referee discharged, costs to abide event.