## HAYS *v.* McCONNELL.

CONTRACT.—*Implied Promise.*—*Work and Labor.*—*Uncle and Niece.*—A girl, upon the death of her mother, was turned away from home by her father, at the age of fourteen, and at the suggestion of her aunt and her grandmother she went to live with an uncle and aunt, with whom she remained until she was twenty-five years of age; when, being engaged to be married, she privately left, and was afterward married; and she subsequently brought suit against said uncle for work and labor. It was not claimed that any express contract existed, and it appeared that she was kindly treated and provided for in a better manner than she would have been if she had merely received ordinary wages.
*Held,* that she was not entitled to recover for her services.

APPEAL from the Dearborn Circuit Court.

DOWNEY, J.—This was an action by the appellee against the appellant, on an account for work and labor extending from December, 1859, to December, 1868, amounting to two thousand two hundred and eighty-eight dollars, with a credit of two hundred dollars, leaving due two thousand and eighty-eight dollars. The action was commenced in March, 1870. The defendant answered: 1st. The general denial; 2d. Payment; and 3rd. Set-off. Reply in denial of the second and third paragraphs of the answer. The issues were tried by a jury; there was a verdict for the plaintiff for four hundred and fifty dollars, a motion for a new trial by the defendant, because the verdict was not sustained by the evidence, overruled, and judgment for the amount of the verdict. The evidence is in the record by a bill of exceptions. The error assigned is the refusal to grant a new trial. The case turns upon the question, whether or not, under the circumstances, the jury should have found the existence of a promise by the appellant to pay for the services rendered by the appellee. It is not always the case, where one person has rendered services for another, that the law will imply a promise to pay for the services. Where services are rendered by a child to its parent, after the arrival of the child at twenty-one years of age, and while it continues to reside with its parent, without any agreement on the part of the parent to pay for such services, the law implies no obli-

gation on the part of the parent to pay for such services. *Resor* v. *Johnson*, 1 Ind. 100; *Adams* v. *Adams' Adm'r*, 23 Ind. 50; *Candor's Appeal*, 5 Watts & S. 513; *Guild* v. *Guild*, 15 Pick. 129; *Andrus* v. *Foster*, 17 Vt. 556.

The rule is not confined to the cases where the relation of parent and child exists. It extends to other relations, and perhaps relationship is only a circumstance tending to rebut the implication of a promise. In *Oxford* v. *McFarland*, 3 Ind. 156, the rule was applied where the relationship of father-in-law and son-in-law existed between the parties. In *Weir* v. *Weir's Adm'r*, 3 B. Mon. 645, it was held to apply where the relation of uncle and nephew existed between the parties. In this case the uncle was an Irishman, who had emigrated to this country at an early day, and had amassed a handsome fortune, and lived and died a bachelor. His three nephews emigrated to this country some years before the death of their uncle, without property or means, and were taken into his employ, fed, clothed, and supplied by him. They, in the mean time, were actively engaged in assisting him in carrying on his business, and rendered essential and valuable services in their several stations, one of them for some twenty years before his death, the other two for six or eight years. No contract for hire or stipulation for wages appeared, nor was it shown by any evidence that they looked for or expected compensation in the form of wages or salaries. They inherited the real estate of their uncle in connection with a daughter of a deceased brother of theirs, and were in addition entitled to share with the non-resident heirs in the distribution of the personal estate. But not content with this, they set up a claim against the administrator of their deceased uncle's estate, for pay for their services during the time they lived with him. The court in deciding the case said: "It is not pretended in this case, that any express contract for services was ever made. If a right to an allowance for services exists, it must rest only on an implied contract or promise to pay. It is said by one learned jurist, 'that an implied contract or promise is inferred from

the conduct, situation or mutual relations of the parties, and is enforced by the law on the ground of justice.' And this language is used by Chief Justice MARSHALL in 12 Wheaton, 341: 'a great mass of human transactions depends upon implied contracts; upon contracts which are not written, but which grow out of the acts of the parties. In such cases, the parties are supposed to have made those stipulations which, as honest, fair and just men, they ought to have made.' And Lord MANSFIELD says, that when *ex equo* and *bono* money is due, though there be no express promise to pay, that the law will imply a promise. Testing the defendant's claim for compensation by the rules and principles just cited, and it is hard to perceive any just ground. upon which they can be made to rest. From the conduct, situation and mutual relations of the parties, so far from its being founded in justice, to allow compensation, it would operate the height of injustice; and so far from the stipulations for payment, which is sought to be implied, being such as honest, fair and just men ought to have made, they are precisely such as honest, fair and just men, under the circumstances of this case, would not have thought of exacting on the one side, or have thought of making on the other," etc. And see *Wilcox* v. *Wilcox,* 48 Barb. 327; *Amey's Appeal,* 49 Pa. St. 126; *Bundy* v. *Hyde,* 50 N. H. 116, and cases there cited.

In further illustration of the legal principle to which we refer, we may cite the cases of *Cauble* v. *Ryman,* 26 Ind. 207; and *King's Adm'r* v. *Kelly,* 28 Ind. 89, where it was held, that when a mother-in-law lived in the family of her son-in law, without any contract for payment of board, nothing could be recovered. In the first named case the court said: " It is a rule of law, recognized by repeated decisions of this court, that where persons standing in the relation toward each other occupied by the plaintiff and the deceased in this case, live together as members of a common family, there is no obligation to pay for services rendered on the one hand, or for board, etc., furnished on the other, without there

be an express promise to pay, or the circumstances be such as to raise an implied promise."

In the case under consideration, the evidence tends to show that after the death of the mother of the appellee, she was turned away from home by her father, and at the suggestion of her aunt and grandmother, went to live in the family of the appellant, who and whose wife were her uncle and aunt. She was at this time only fourteen or fifteen years of age. She remained until she was twenty-five or twenty-six years of age, when being engaged to be married, she privately left, and was afterward married. She was a witness in the trial of the case, and did not testify to the existence of any contract or agreement by which she was to have wages. The testimony of the other witnesses tends very strongly to show an understanding that she was not working for wages. She appears to have labored industriously, and to have been kindly treated by the appellant and his family, and provided for in a much better manner, as it seems to us, than she could have been had she received ordinary wages. No accounts seem to have been kept by her against the appellant for her services, nor was there any demand for pay, nor does it appear that they ever had any settlement relating to her services or as to what she received from the appellant, or that any settlement was demanded by her. Without further stating the evidence, all of which we have carefully read, we are of the opinion that the verdict of the jury was not sustained by the evidence. We think the case comes clearly within the principle of law to which we have alluded, and which is enunciated in the decisions to which we have referred.

We are aware of the rule recognized in the cases of *Dallas* v. *Hollingsworth*, 3 Ind. 537; *Wheatly* v. *Miscal*, 5 Ind. 142; *Van Pelt* v. *Corwine*, 6 Ind. 363; and *Garner's Adm'r* v. *Board*, 27 Ind. 323, where it is held that an infant is not bound by a special contract to perform labor for a definite time, but may avoid the contract and recover for the value of the services rendered. These cases do not affect the case under

consideration. The evidence was abundant to show a ratification of the contract or arrangement under which the appellee was living with the appellant, after she became twenty-one years of age. The contract was only voidable, and the appellee not having avoided it on her arrival at majority, but having very clearly ratified it by continuing to live with the appellant upon the same terms, the question of her infancy, for the first few years of the time during which she lived with appellant, cannot affect the case. But if there was no ratification, and the case was one between an infant and an adult, still there must be such facts as to justify the implication of a promise to pay, when there has been no express promise.

The judgment is reversed with costs, and the cause remanded, with instructions to the circuit court to grant a new trial.

*D. S. Major, O. B. Liddell,* and *J. Schwartz,* for appellant.

*J. D. Haynes* and *J. K. Thompson,* for appellee.