No. 7517.

## BROWN *v.* YARYAN ET AL.

74 305|
125 399

GUARDIAN AND WARD.—*Custody.—Education.—Support.—When Duty to Keep Ward Employed.*—A guardian is entitled to the custody of his wards, and it is his duty to provide for their education; and when of limited fortune, and able to earn their support, it is his duty to keep them so employed rather than to allow them to remain in idleness or expend their limited patrimony.

CONTRACT.—*Evidence.—Member of Family.—Insufficiency of Evidence to Sustain Finding.*—Upon a trial, in an action to recover for work and labor, the evidence showed that the plaintiff, while under guardianship, went to live with the defendant, her uncle, under an agreement made with him by her guardian that she should live with him as a member of his family, and be boarded, clothed and educated by him; that nothing was said about wages or pay; that under this agreement she continued to live with the family until her majority, and until her marriage, eight years thereafter, never asking or demanding wages or pay for her services, the defendant providing for her support and treating her substantially as a member of his family; that, from the time of her majority until shortly before her marriage, she had loaned her money to her uncle, he paying her interest therefor, and that upon settlement with him she had allowed him a certain sum for clothing furnished her.. *Held*, that the evidence was insufficient to entitle the plaintiff to recover.

From the Madison Circuit Court.

*C. L. Henry, H. D. Thompson* and *W. S. Diven,* for appellant.

*W. R. Pierse, J. B. Julian, J. T. Julian* and *R. Collins,* for appellees.

MORRIS, C.—The appellees sued the appellant for services rendered him by the appellee Mary J. They allege in their complaint that said Mary J. went to live with the appellant in 1861, as a servant girl, and that she continued to live with and work for the appellant until 1876, when she married the appellee John B. Yaryan; that her services were worth $2,081.

The appellant demurred to the complaint. The demurrer was overruled, and he excepted. The appellant then an-

swered the complaint by a general denial.    He also pleaded payment, and in a third paragraph of the answer he states that in 1861 the grandfather of the said Mary J., with whom she had been living, died, and that she then came to live with him as a member of his family, and that she so continued to live with him until 1876, when she was married to her co-appellee; that the appellant, during the time said Mary J. lived with him, treated her as a member of his family, sending her to school and furnishing her clothing, attention and care, as if she had been his daughter.

The appellees replied in denial of the second and third paragraphs of the appellant's answer.    The cause was submitted to the court for trial.    Finding and judgment in favor of the plaintiffs for $350.

The appellant moved the court for a new trial, upon written reasons filed, as follows:

1st.   That the finding of the court is contrary to the evidence;

2d.   That the finding of the court is contrary to law.

The motion for a new trial was overruled, and the appellant excepted.    The errors assigned are:

1st.   That the court below erred in overruling the demurrer to the complaint;

2d.   In overruling the appellant's motion for a new trial.

The appellant waives the first error, but insists that the court erred in overruling his motion for a new trial.    It is claimed by the appellant that there is no conflict in the testimony; that it shows conclusively that the appellee Mary J. Yaryan was his niece; that she lived with him as a member of his family, and as such performed the labor mentioned in the complaint.

The appellee Mrs. Yaryan was a witness in her own behalf.    She testified that she went to live with appellant, who was her uncle, on the 1st of August, 1861; that she worked for him until she was twenty-one years of age; that the

Brown *v.* Yaryan *et al.*

appellant furnished her clothes, boarded her, and sent her to school some; that she attended school four different terms, not regularly nor all the time; that she did not have the opportunities to attend school that other girls in the neighborhood had; that the appellant's family consisted of seven members; that she did most of the house work, Mrs. Brown, the appellant's wife, being sick most of the time; that the appellant had no other help in his house; that she and one of the appellant's boys milked four, and sometimes twelve, cows. She was about fourteen years of age when she went to live with the appellant; that after she attained her majority her guardian, William Webb, settled with her, paid her her share of her grandfather's estate, charging her some fourteen dollars for a doctor's bill, paid for medical attendance upon her the winter after she went to live with the appellant; that after she became of age she continued to live with and work for the appellant as before, loaned him her money, for which he agreed to, and did, pay her ten per cent. interest; that when he settled with her for the money loaned him, and interest, she allowed him ninety-three dollars for clothing; that when she was married he gave her no outfit; that she got her wedding clothes and procured them to be made herself; that she was not treated altogether as one of the family; that her uncle, the appellant, always treated her kindly, but that his wife and sons sometimes mistreated her. She does not testify to any contract between her and her uncle as to wages, nor to any promise on his part to pay her for her labor, except that he had promised to give her a cow, but did not; that her services were worth two dollars per week.

William Gray, a witness called by the plaintiff, testifies that he was acquainted with the parties; that he had boarded at the appellant's house; that the appellee did a great deal of hard work; that in some respects the appellee was treated kindly,

but she was treated more like a servant than a member of ap-- pellant's family, though in what respect he could not say.

William Webb testifies that he was the guardian of the appellee Mary J.; that the agreement between him and the appellant was, that Mary should live with appellant as a member of his family, be treated as one of the family, have school- ing, and be treated in every respect as one of the family; that there was never any different arrangement made in regard to her living with the appellant.

The appellant testified that the appellee Mary J. was his niece; that her guardian, William Webb, brought her to his house in August, 1861, and asked him to take her and keep her as one of his family; that he agreed to take her as a member of his family, board her, clothe and school her, as he would were she his own child. That he clothed her well, as well as other girls in the neighborhood were clothed, and sent her to school as he did his own sons. That he wished her to go to school more than she did, but that she refused to do so. That he took her to church and fairs as he would his own child, and as a member of his family. That her clothing was procured and paid for as was the clothing of the other members of the family. That there never was any contract between Mrs. Yaryan and him- self as to wages; that he never agreed or promised to pay her any thing for services, and that she never demanded wages or mentioned such a thing until after she had left and married John B. Yaryan. That he always treated her kindly, and as a member of his family. Other witnesses were called, whose testimony supported that of the appel- lant. The appellant insists that the finding and judgment of the court are not only without support from the evidence, but against the uncontradicted testimony in the case.

The testimony of the guardian and of the appellant, the only witnesses who testify as to the terms upon which the appellee Mrs. Yaryan went to live with the latter, is in

complete agreement. They both swear that she was to live with him as a member of his family, to be boarded, clothed and educated as one of his family. Upon this agreement with the guardian the appellant took the appellee, boarded, clothed and schooled her. This was the only arrangement made. There was nothing said about wages or pay; no agreement or promise on the part of the appellant to pay the appellee for her labor; no demand by her at any time for pay. When she attained her majority she came into possession of $800, which she loaned to the appellant at ten per cent. She then says she continued to live with the appellant for eight years, never asking or demanding wages or pay for her services; that her uncle furnished boarding, clothing and support as before. With this agrees the testimony of the appellant and all the witnesses. There is some conflict, it is true, in the testimony of the witnesses as to the amount of work which the appellee performed, and as to whether she had received sufficient schooling, and as to the conduct of some of the members of the appellant's family toward her. She says that her uncle always treated her with kindness; that some times the boys got mad and swore at her; that Mrs. Brown also got mad at her and bemeaned her. But as to the relation which Mrs. Yaryan sustained to the appellant there is no conflict, but entire harmony. It is impossible to resist the conclusion that she regarded herself, and that she was regarded by the appellant and his family, as a member of the family, and not as a servant working for wages. *Webster* v. *Wadsworth*, 44 Ind. 283; *Oxford* v. *McFarland*, 3 Ind. 156; *Cauble* v. *Ryman*, 26 Ind. 207; *King's Adm'r* v. *Kelly*, 28 Ind. 89; *Hays* v. *McConnell*, 42 Ind. 285; *Smith* v. *Denman*, 48 Ind. 65; *Hall* v. *Finch*, 29 Wis. 278; *Garner* v. *Gordon*, 41 Ind. 92.

The appellees insist, however, that the payment by Webb, the guardian, of $14 for medical services rendered Mrs. Yaryan, in the winter of 1861–2, and the payment of $93

by her to the appellant, are conflicting circumstances of such weight as to require, under the decisions of this court, the affirmance of the judgment below. But the payment of the $14 is so explained by the guardian as to harmonize the fact with the views of the appellant. He says that he paid it because, in view of the arrangement made with the appellant for the support of his ward, he deemed it just to do so ; that, as she was taken sick so soon, he ought to pay it.

Nor was the fact that in settlement with the appellant, for the use of her money, just before Mrs. Yaryan left his house, she allowed him $93 on clothes, inconsistent with the fact that she had lived with him as a member of his family. She was then twenty-nine years of age, and, had she thought herself entitled to wages at all, it must have occurred to her that they had been long due and long withheld. She made no claim of the kind, but, regarding herself as the debtor of her uncle, paid the $93. It can not be said, we think, that this circumstance is inconsistent with the agreement made between the appellant and the guardian of Mrs. Yaryan, upon which all parties seem to have acted.

It is also said by the appellees, that it was not competent for the guardian of Mrs. Yaryan, as such, to enter into this arrangement with the appellant for her support ; that it was a contract to bind the appellee to the appellant as an apprentice until she became of age. The arrangement was not, however, that Mrs. Yaryan should remain with the appellant until she attained her majority, but that she should live with him as a member of his family, without any fixed time.

The guardian was entitled to the custody of his ward. It was his duty to provide for her education, and she being able to earn her support, in view of her limited fortune, it was his duty to see that she did it, rather than to allow her to remain in idleness or to expend her limited patrimony. The rule is, that the guardian should keep his ward employed.

in earning its support. *The State, ex rel.,* v. *Clark,* 16 Ind. 97 ; Schouler Domestic Relations, 455.

The evidence does not, we think, entitle the appellees to a judgment. It did not prove an agreement to pay her wages, but did prove the contrary.

The judgment should be reversed.

PER CURIAM.—It is ordered that, upon the foregoing opin-ion, the judgment below be in all things reversed, at the costs of the appellees.