No. 9413.

## DAVIS *v.* DAVIS.

HUSBAND AND WIFE.— *Wife's Personal Services.*—Before the act of 1879 the personal services and earnings of a wife belonged to the husband.

SAME.—*Promise to Wife.*—*Maintenance of Child in Family.*—Where a man and woman, owning adjoining farms, marry, and, dwelling in the house of the wife, live upon the products of both farms indiscriminately, maintaining as a member of their family a grandchild of the husband, the wife can not (after the death of the husband) maintain an action against the child's father upon his promise made to her to pay her for caring for and maintaining the child.

PARENT AND CHILD.—*Contract with Grandparent for Child's Maintenance not Implied.*—Where a child is taken to be brought up in the family of its grandfather, the father, without express promise, is not liable for the child's maintenance.

From the Hendricks Circuit Court.

*J. V. Hadley, E. G. Hogate* and *R. B. Blake,* for appellant.
*L. M. Campbell* and *J. T. Burns,* for appellee.

WOODS, C. J.—The appellee sued the appellant upon an alleged express and upon an implied promise to pay to her reasonable compensation for taking the " custody and care of Charles Davis, an infant son of the appellant, and for boarding, nursing and clothing him."

The appellant answered by pleas of general denial, six years'

limitation, and special matter, provable under the general de-nial. Reply in general denial.

The testimony of the appellee shows, that, in 1860, being a widow, possessed of one hundred acres of land, part of which was under cultivation, she married James Davis, the appel-lant's father, who owned a farm, adjacent to hers, of near three hundred acres. She was then about forty-one years old and he fifty-seven or more, and each had minor children. After the marriage they lived with their children upon her land un-til James Davis died; he died December 7th, 1878. In March, 1867, the wife of the appellant died, leaving an infant son about one year old, named Charles. Two or three days before the death of his mother, the child had been taken to the house of the appellee and her husband, and remained there until June, 1880. Immediately after the funeral of his wife, the appellant told the appellee if she would take the child and take care of him he would pay her for it. She accordingly did board him and care for him for more than thirteen years, the service being well worth $75 per year during that time. The lands of the appellee and her husband were farmed as one farm, the family living in the house of the appellee. The boy worked some on the place after he got old enough, plow-ing corn, carrying in wood, helping to milk, and doing such things as he could and was disposed to do. His clothing was furnished there in the family. The appellee had poultry, cows, and orchard, sold apples, butter and eggs, and bought all of the clothing for the boy after her husband's death. His father bought nothing for him. The boy lived with the appellee, and she furnished him a home and shelter under her own roof, and kept him for eighteen months after James Davis died, the boy being sick with catarrh in the head a greater part of that time, under the doctor's hands, and unable to go to school.

The appellant, testifying in his own behalf, denied the promise to pay for the care and nursing of the boy, and of-fered other testimony besides his own tending very strongly to show, but denied by the appellee, that during the last sick-

ness of the mother, the appellee being present, the child was given by the mother, the appellant consenting, to the grandfather, to be taken and reared as one of his own children, and upon this understanding and agreement the child was taken, into the family of the appellee and her husband, and was kept as a member of the family until the death of the grandfather, when the appellant proposed to take him to his own home,. but, at the request of the appellee, permitted him to remain. with her, awaiting the return of her own absent son; and that during the time he so remained with the appellee, his work and services to her were worth more than his keeping.

It is very plain upon the testimony of the appellee that there was no cause of action in her favor for anything done or furnished for the boy during the life of her husband, to whom, if to any one, the cause of action belonged. *Baxter* v. *Prickett's Adm'r*, 27 Ind. 490; *Yopst* v. *Yopst*, 51 Ind. 61.

Conceding the right of the appellee to recover for the value of her services and for the shelter and maintenance of the boy after her husband's death, we are compelled to say that the damages awarded, to wit, $350, are excessive. We are also of opinion that the instructions complained of were erroneous. because, if for no other reason, not applicable to the evidence. They were as follows:

"1st. The wife of the defendant had no power under the law to give away his child to the husband of the plaintiff or to any one else, and such an agreement, if made, did not deprive the father of the right to its custody, nor release him from his obligation to maintain it during its minority.

"5th. The lands of a married woman and the profits thereof are her separate property under the law, and if the plaintiff maintained the child of the defendant in whole or in part from the proceeds of her own land, under a contract express or implied between herself and the defendant, then she would be entitled to recover any amount due for the same, although she were married during part of the time of rendering the service."

This last instruction is plainly objectionable because of its

confusion of ideas—beginning with reference to maintaining the child from the products of the appellee's land and ending with "rendering the service,"—leaving the jury free to allow for the service.   It could have had no other effect in this case, as there was no evidence that the appellee furnished to the child any of the separate products of her own land; and if it was meant to tell the jury that, under the circumstances shown in this case—the appellee and her husband occupying the house on her land, but farming her land and his as one farm, mixing the products indiscriminately—she could recover for a proportionate part, to be guessed at by the jury, without any evidence what that part was, or of what it was worth, it was just as clearly wrong.

As to the first instruction, if the evidence showed a giving of the child to the grandfather, it was with the consent of the father, and the giving was as much his act as that of the mother; and, if taken and kept under such an agreement, there could, of course, be no right to compensation for the keeping. Indeed, if the mother, without the consent of the appellant, had given the child to the grandfather, and he had taken it to bring up as a member of his family, he would have had no right of action against the appellant for the service rendered, and certainly no right of action could have arisen out of the transaction in favor of the appellee.

The court, perhaps, meant to convey the idea that, notwithstanding such giving away of the child by the mother, yet the father's duty to maintain continued, and would support his subsequent express promise to pay for the child's maintenance; but, from the instruction as given, the jury was likely to have understood that the father's duty to the child bound him to pay for its support, without any express promise, notwithstanding it was taken under the supposed agreement with the mother—which clearly is not the law.

Judgment reversed, with costs and with instructions to grant a new trial.