No. 200.

## James, Administrator, v. Gillen.

Contract.—*Member of Family.*—*Services.*—*Infant.*—Where a niece resides with her aunt, as one of the family, there is no obligation to pay for services rendered, on the one hand, and for board, lodging, and clothing on the other, unless there is an express promise to pay, or the circumstances are such as to raise an implied promise. This rule is applicable to infants as well as to adults; and the infant can not, after reaching its majority, disclaim the family relation, and recover the value of the services performed during minority.

From the Putnam Circuit Court.

*T. E. Ballard* and *E. E. Ballard*, for appellant.

*H. H. Mathias* and *S. A. Hays*, for appellee.

CRUMPACKER, J.—Mary Gillen filed a claim against the estate of Sarah Daugherty, deceased, of which John H. James is administrator, for work and labor performed for said decedent from the first day of August, 1883, to the 30th day of August, 1887. The cause was tried by a jury, and a verdict returned in favor of the claimant, upon which judgment was rendered.

The evidence showed that the decedent and her brother, Henry Daugherty, were both unmarried and past the meridian of life, and they owned adjoining farms in Putnam county. ' There was a house upon the decedent's farm, and she and her said brother entered into an agreement whereby they were to live together in said house and maintain a household, the brother agreeing to look after the farms and furnish all the provisions and clothing, and the decedent was to attend to the household affairs. This arrangement had continued for a number of years prior to the decedent's death, which occurred in the latter part of August, 1887. In 1881 or 1882 a sister of these parties died, leaving a family of four small children, the oldest being the appellee, who was then twelve or thirteen years of age. Soon after the death of this sister, Henry Daugherty and the decedent took the three younger children into their family and cared for them. Appellee lived with her father and another uncle until the first of August, 1883, when the decedent's health began to decline, and at the request of Henry Daugherty appellee also went to their home and lived there with her uncle and aunt and brothers and sisters until the death of the aunt as aforesaid. Appellee was fifteen years of age at that time, and the decedent's health was very poor, so that she was unable to do much, if any, of the household work, and the burden of it was thrown upon appellee and her sister, two years younger than

she. They continued to live in this manner, Henry Daugherty furnishing the provisions and clothing for all the family. The decedent was a paralytic, and continued to grow worse gradually, until she became quite helpless and required a great deal of care and attention, and services were required in caring for her which were very disagreeable. Henry Daugherty, appellee, her sister and brothers, all assisted in waiting upon the decedent after she became helpless, and appellee and her sister undertook the burden of the household work, which they performed in a very satisfactory manner.

There was evidence tending to show that they all lived as a common family, and that the appellee assisted in making clothes for and caring for her brothers; that she was nursed through a spell of sickness; that she went in society and to church, and was clothed and provided for as well as the average girl of her age and station in life in that vicinity, and that Henry Daugherty treated her with that kindness and consideration with which a parent would treat a child. He was her guardian during the time she lived there. There was no contract or agreement whatever about compensation or the terms upon which appellee was to live with her uncle and the decedent; and she kept no account of any kind, and never said anything about wages during the lifetime of the decedent.

Upon the other hand, there was evidence tending to prove that appellee was compelled to perform work that was extraordinarily hard and distasteful, and which pertained to the station of a household servant or a nurse rather than a child; that she was not sent to school and was very poorly clothed. Also, on one occasion Henry Daugherty, as her guardian, charged her with four dollars for medical treatment procured for her. The guardian in explanation of this charge said she visited at a neighbor's house where the inmates were afflicted with measles, in disobedience of his instructions, and that he warned her in advance that if she

became sick he would not pay the physician's bill; that she contracted the measles, and he charged her with the expense of the attending physician.

The jury found that appellee's services were worth $500 more than the cost of her maintenance.

Among other instructions the court gave the jury the following, which is very vigorously assailed by counsel for appellants:

" It is a rule of law that where persons standing in the relation toward each other occupied by the plaintiff and the deceased, that of aunt and niece, living together as members of a common family, there is no obligation to pay for services rendered on the one hand and for board, lodging and clothing on the other, without there be an express promise to pay, or the circumstances be such as to raise an implied promise, but this rule does not apply to infants, for they can not be bound by the implied contract growing out of such a relation."

The objection urged against this instruction is, that while it states the general doctrine respecting the family relation correctly, it erroneously declares that it does not apply to infants, where the relation is assumed. A minor is not bound by his express contract to perform services, and may at any time renounce it and recover the value of the services performed, regardless of the contract. This proposition is so familiar and well settled in this State that no citations are needed to support it.

It is insisted in defence of the action of the court that, if a minor may disaffirm his express contract, he may, upon the same principle, disaffirm one arising by implication of law, and that in the family relation created by the act of the parties there is an implied agreement that services upon the one hand shall compensate for maintenance upon the other, and *vice versa.*

Before there can be a recovery for work and labor in any case, there must be established some kind of a contract, either

express or implied. No one can be lawfully charged for services performed for him except upon the theory of a promise to pay for such services. Where there is no express agreement, but the services are performed upon the one side and accepted on the other, under such circumstances that reason and justice would dictate that they should be paid for, the law will imply a promise, and permit its enforcement.

Where the relation of the parties is such that compensation, according to human intercourse, is ordinarily given and received, the law will create a promise to pay. This is generally the case where there appears to be no other adequate motive than the expectation of reward to prompt the performance of the service. But where its performance may be accounted for upon grounds more probable than the hope of pecuniary reward, such as acts of kindness and affection between members of a common family, prompted by a sense of love and duty, no promise to pay will be implied.

Thus it was said by the court in *Davidson* v. *Westchester, etc., Co.,* 99 N. Y. 558: "A promise to pay for services is sometimes implied by law ; but this is done only when the court can see that they were rendered under such circumstances as authorized the party performing to entertain a reasonable expectation of their payment by the party soliciting the performance."

In the case of *Woods* v. *Ayres*, 39 Mich. 345, the court said : " Where there is a spontaneous service, as an act of kindness and no request, or where the circumstances account for the transaction on some ground more probable than that of a promise of recompense, no promise will be implied. The contract connection is not established."

Upon this principle it is universally held in all cases where the family relation exists, whether natural or assumed, in the absence of an express agreement or circumstances from which an agreement may be fairly inferred, that no promise will be created by implication of law to pay for services upon one hand or for support upon the other. This rule of law

has its foundation in the theory that the relation repels the legal inference of contract rather than in an implied understanding that the services should compensate, and be compensated by the maintenance.

It is the policy of the law to inculcate harmony, confidence and affection in the domestic relation, and this can better be accomplished by permitting the sense of filial regard, in a large measure, to regulate the hearthstone economy, than by reducing it to a mercenary basis by applying the rules relating to master and servant. The doctrine applies with peculiar force to parent and child, and those occupying that relation by arrangement or adoption, and continues as long as the relation exists, regardless of the age of the parties. *Davis* v. *Davis*, 85 Ind. 157 ; *Smith* v. *Denman*, 48 Ind. 65 ; *Hays* v. *McConnell*, 42 Ind. 285.

Nearness of kinship is influential only in determining whether the family relation does in fact exist, but after such relation is once established, and the parties live as members of a common family, the rule is the same regardless of the questions of consanguinity or affinity.

Thus it was said by COOLEY, J., for the court in *Thorp* v. *Bateman*, 37 Mich. 68 : "The presumption always is when a child is thus taken into a family, that neither support nor services are expected to be compensated, except as the one compensates the other ; in other words, that the child comes in as a member of the family, and for the time being occupies substantially the same position as would a member of the family by nature."

This principle seems to be generally recognized in this country and England, and courts apply it with much vigor and strictness. Counsel for appellee admit its application to parent and child in the natural relation, and to all members of a common family except infants by adoption. The argument is that the arrangement which creates the relation, and carries with it these consequences, is contractual, and may be disaffirmed by the infant. We can not concur in this view.

In our opinion, upon considerations of public policy, the reasons are stronger in favor of the application of the doctrine to infants than to adults. The law recognizes the home as the most potent refining and humanizing agency known to our civilization, and its policy is to encourage the extension of its hospitalities to those who by the hand of misfortune may have been deprived of its protection and beneficent influences. But if one, out of a benevolent disposition, should adopt a parentless child into his family as a member thereof, and faithfully perform the office of parent to it, and the child, upon reaching its majority, should be permitted to convert the relation into that of master and servant, and recover whatever a court or jury might conclude the services were worth over and above the cost of support in dollars and cents, the result would be deplorable. It would close all of the private homes of the country against the orphan. The only case cited which supports this mischievous doctrine is *Garner* v. *Board*, 27 Ind. 323, and the authorities cited in that case in support of the decision all relate to the disaffirmance by an infant of an express contract for labor. The court evidently lost sight of the important distinction between the relations of parent and child and master and servant.

In a large sense, the law is the guardian of the infant, and permits him to assume with another the relation of parent and child without involving contractual obligations upon the part of either, upon the theory that such arrangement is beneficial to the infant.

The case of *Williams* v. *Hutchinson*, 3 N. Y. 312, was an action to recover wages for services performed by the plaintiff during his minority. The defendant stood *in loco parentis* to him, but it was contended that the infant could disclaim the relation and recover upon an implied promise to pay. This doctrine was denied, the court saying: " The counsel for the appellant assumes that the plaintiff, because he was an infant, could not consent to any arrangement by which

he should waive the right to claim wages for his services. This is not correct. An infant may enter into a binding contract which is clearly for his benefit. * * * It being clearly for the benefit of the infant that he should be provided with a home, any contract beneficial to himself which he might make for that purpose, would be binding." Again, the court said: " The referee, it is true, has found that in dollars and cents the value of the services exceed the cost of maintenance; but these are not the only benefits which the plaintiff has received. There are considerations growing out of the relation which the parties sustain to each other which can not be computed in money."

The same question was decided in the same way by the Supreme Court of Vermont, in the case of *Ormsby* v. *Rhoads*, 59 Vt. 505. In the latter case the court based the decision upon the ground that an infant could enter into a binding contract for necessaries, and was, therefore, bound by the arrangement which established the relation of parent and child.

In the case of *Hudson* v. *Lutz*, 5 Jones (N. C.), 217, the court held an infant bound by such arrangement. In speaking of the plaintiff's claim the court quoted approvingly the language of RUFFIN, J., in *Williams* v. *Barnes*, 3 Dev. 349, as follows: " Such claims ought to be frowned on by courts and juries. To sustain them, tends to change the character of our people, cool domestic regard, and in the place of confidence, sow jealousies in families."

The same principle received the unqualified sanction of the court in each of the following cases: *Starkie* v. *Perry*, 71 Cal. 495; *Gerber* v. *Bauerline*, 17 Ore. 115; *Mobley* v. *Webb*, 83 Ala. 489; *Dodson* v. *McAdams*, 96 N. C. 149; *Defrance* v. *Austin*, 9 Pa. St. 309; *Barhite's Appeal*, 126 Pa. St. 404; *Ryan* v. *Lynch*, 9 Mo. App. 18; *Williams* v. *Williams*, 132 Mass. 304; *Smith* v. *Johnson*, 45 Iowa, 308; *Wyley* v. *Bull*, 41 Kan. 206; *Weir* v. *Weir*, 3 B. Mon. 645.

In this State an infant is liable upon an implied contract

for necessaries, though he is not bound by his express contract, as the consideration may be always inquired into. *Ayers* v. *Burns,* 87 Ind. 245 ; *Price* v. *Sanders,* 60 Ind. 310 ; *Henderson* v. *Fox,* 5 Ind. 489.

It is impossible to estimate the value of the comforts, discipline and training of the home upon a pecuniary basis, and we think the correct rule is that in the domestic relation, though assumed, the parties do not occupy the contractual *status,* and there is no basis for implied promises upon either hand.   The law will permit one to assume the relation of a parent towards an infant, and, if he honestly and faithfully performs the obligations incident thereto, the infant will not be allowed to convert the relation into that of master and servant.

This relation implies mutual obligations and duties, and if the foster parent should disregard his obligations, and impose burdens upon the infant without supplying the corresponding benefits of a home and proper training, the relation would be destroyed, as it would be unjust for the parent to exact the fulfilment of the obligations of a child, and give in return only such support and protection as would be due from a master to a servant.

While the case of *Garner* v. *Board, supra,* has not been expressly overruled, it has been overruled in effect by later decisions of the Supreme Court of this State, in which the doctrine of this opinion has been recognized, by implication at least, as applicable to infants.   *Lockwood* v. *Robbins,* 125 Ind. 398 ; *Wright* v. *McLarinan,* 92 Ind. 103 ; *Brown* v. *Yaryan,* 74 Ind. 305 ; *Medsker* v. *Richardson,* 72 Ind. 323 ; *Hays* v. *McConnell,* 42 Ind. 285.

In the case before us, whether the parties lived together as members of a common family or as master and servant is a mixed question of law and fact, and belongs to the jury, under proper instructions from the court.   If they lived in the former relation, there could be no recovery in the absence of an express contract, or circumstances from which it is rea-

sonably apparent that compensation was expected on the one hand and intended to be given on the other.

It follows that the court erred in giving the instruction.

We intimate no opinion upon the sufficiency of the evidence to support the verdict, as the cause will be tried upon another theory, and that question may not arise again.

The judgment is reversed, with instructions to grant a new trial.

Filed Feb. 2, 1892.