BOYD, ADMINISTRATOR, *v.* STARBUCK.

[No. 2,232.    Filed October 28, 1897.]

APPEAL AND ERROR.—*Evidence.*—Where there was some evidence sustaining the finding of the jury, a judgment based on such finding will not be reversed on appeal. *p. 312.*

MASTER AND SERVANT.—*Work and Labor.*—*Decedent's Estate.*—*Pleading.*—*Defense.*—Where the relation of master and servant is shown to exist in the trial of a cause against a decedent's estate, it does not devolve upon the claimant, who lived in decedent's family during the rendition of such services, to show that her services were worth more than board and clothes furnished her by decedent, as such charge for board and clothing was matter properly in defense to be proved under a plea of set-off. *pp. 312, 313.*

SAME.—*Parent and Child.*—In an action against a decedent's estate for work and labor by one who lived in decedent's family, the question as to whether the family relation existed is one of fact to be determined from the facts and circumstances of each case, and when it is shown that the relation of parent and child was formed and continued to exist, the courts will not reduce that relationship to one of master and servant. *p. 314.*

EVIDENCE.—*Value of Services.—Work and Labor.*—Where a witness testified in an action against a decedent's estate for work and labor done, that she had seen plaintiff working for decedent, particularized the kind of work she had seen her do, and then stated the value of such services, the admission of such evidence will not be held to be erroneous on the ground that it was not shown that the witness knew the value of such services in the neighborhood in which the work was done, where the record fails to show how far away witness lived. *pp. 315, 316.*

From the Huntington Circuit Court. *Affirmed.*

*J. B. Kenner* and *U. S. Lesh,* for appellant.

*Branyan & Branyan* and *L. L. Simons,* for appellee.

ROBINSON, J.—Appellee filed a claim against the estate of appellant's decedent, and was given a verdict by a jury.

The only error assigned which is discussed by appellant's counsel is the overruling of the motion for a new trial.

There was evidence to show that some time between 1880 and 1883, probably about 1883, appellee, who was then about twenty years old, went into the home of the decedent and continued with her until decedent's death, in August, 1895. The decedent, at the time appellee went into her home, was a widow, living alone. During these years appellee did all the housework for decedent—cooking, washing, ironing, scrubbing, sweeping, working in garden, caring for the little stock decedent had,—and all other work necessary to be done, both in and out of doors. Appellee and decedent lived alone until decedent married, but the husband died about a year after the marriage, and this again left decedent and appellee alone until decedent's death. During the last years of her life decedent was blind, the witnesses differing as to the length of time from two to five years. For some months before her death de-

cedent was partially paralyzed, and became quite helpless and required a great deal of care and attention, and services were required and were performed by appellee that were very disagreeable. Appellee did this work alone, except when assisted by neighbors visiting. The burden of the household work and caring for decedent was upon appellee. During these years decedent furnished appellee with board and clothing. The evidence is conflicting as to the kind of clothing furnished, but it seems that most of the time at least she was clothed about as well as the average girl of her station in life in that vicinity. There was evidence to the effect that part of the work required of appellee was very hard, such as carrying water a long distance and caring for stock, consisting of cow and hogs. Appellee was not sent to school after she went to stay with decedent, but attended church and went into society. There was some evidence that appellee went to stay with decedent at decedent's request; the decedent afterward said she could not get along without appellee, and that she would do whatever was right by her. Appellant's counsel insist that the evidence is insufficient to show that the relation of master and servant existed between decedent and claimant during the time for which a recovery is sought. It is true, the evidence is not very satisfactory, but it is not denied there was some evidence to sustain the finding of the jury on that point, and under the well settled rule we cannot weigh the evidence to determine where the preponderance lies. It is also argued that, assuming the relation of master and servant to have been established, there is no evidence that the services rendered by claimant were worth more than the board, clothes and other things furnished her by decedent. There is quite a conflict in the evidence as to the value of claimant's services. If the claimant was indebted

to the estate for board and clothing, it could have been shown under a plea of set-off. The only pleading filed in the case was the claim. No attempt was made to prove a set-off. The statute puts in all defenses in a case like that at bar, except set-off and counterclaim. Section 2479, Burns' R. S. 1894; *Kippenberg, Exr.,* v. *Morris,* 80 Ind. 540; *Griffin, Admr.,* v. *Hodshire,* 119 Ind. 235; *Dick* v. *Dumbauld, Admx.,* 10 Ind. App. 508.

Counsel cite the cases of *Hays* v. *McConnell,* 42 Ind. 285; *Brown* v. *Yaryan,* 74 Ind. 305, and *James, Admr.,* v. *Gillen,* 3 Ind. App. 472, in support of their contention that the evidence shows that appellee was taken into decedent's home and there treated as a member of the family, and that without regard to the value of the services rendered no recovery can be had.

In *Hays* v. *McConnell, supra,* a fourteen-year-old girl, upon the death of her mother, was turned away from home by her father, and at the suggestion of her aunt and grandmother went to live with an uncle and aunt, with whom she remained until her marriage, at which time she was twenty-five years old. In a suit against her uncle for work and labor, it appearing that no express contract existed, and that she had been kindly treated and provided for in a better manner than she would have been if she had merely received ordinary wages, it was held she could not recover.

In *Brown* v. *Yaryan, supra,* a girl fourteen years old, while under guardianship, went to live with her uncle, under an agreement made with him by her guardian that she should live with him as a member of his family, and be boarded, clothed, and educated by him; that nothing was said about wages or pay; that under this agreement she continued to live with the family until her majority, and until her marriage eight years thereafter, never asking or demanding wages or pay, the uncle providing for her support, and treating her

substantially as a member of his family, it was held no action would lie for wages.

In *James, Adm'r*, v. *Gillen, supra*, a girl fifteen years old went to live with an uncle and aunt, and continued to live with them until after she was of age; that she lived with them as one of the family and was clothed and provided for. The uncle was her guardian during the time. There was no contract or agreement about compensation, or the terms upon which appellee was to live with them, nor was anything said about wages during the lifetime of the aunt. After the aunt's death she filed a claim against her estate, and it was held she could not recover.

These cases are decided upon the ground that the circumstances surrounding each particular transaction make it probable that the relations existing between the parties were based upon something other than a promise to recompense, and that the services were not rendered under such circumstances as authorized the party performing them to entertain a reasonable expectation of receiving pay.

Whether or not the family relation does in fact exist must be determined from the facts of each case, and when it is shown that the relation of parent and child was formed and continued to exist, the courts will not reduce that relationship to one of master and servant. But we think there was evidence in this case from which the jury could say that the relation of master and servant existed between the decedent and claimant. It appears from the evidence that decedent said at one time she could not do without appellee, and that she intended to do whatever was right by her.

In the fourteenth instruction, the court said to the jury: "I instruct you in this case that if you find from the evidence that the claimant was not a relative or member of the family of decedent, and you should

further find that she did valuable services for the decedent in her lifetime, as alleged in the complaint, and you should further find that the decedent from time to time declared her purpose of providing for her, for her services, then you may find for the claimant and assess her recovery at just such sum as a fair preponderance of the evidence shows it to have been worth for the last six years of such service."

Without deciding that the fourteenth instruction. given by the court correctly states the law, yet when it is taken in connection with all the other instructions it contains nothing harmful to appellants. If the instruction was not sufficiently broad in itself, the objections urged are met by other instructions given.

The court instructed the jury that, "where one is taken into the family of another, and is regarded and treated in every respect as a member of the household, and is a member of such family, even when there may be no ties of blood, there is no implied obligation to pay for services rendered on the one hand nor for board, schooling, clothing, care, and medical attention on the other."

This instruction without the words "and is a member of such family," was requested by appellant, and after inserting the above words the court gave the instruction. We fail to see how the added words could be harmful to appellants.

The fifth, seventh, and eighth instructions requested by appellant were given in substance in the instructions given by the court. The sixth instruction requested contains principally matters of argument, and was properly refused. We have carefully considered all the instructions given by the court, and taking them all together, they correctly state the law of the case.

Another ground for a new trial was in permitting a

certain witness to testify as to the value of claimant's services, without showing that the witness was competent to speak on that subject. The witness testified that she had seen appellee working for decedent, and had visited decedent many times while appellee was working for her, and had seen appellee working for decedent, and particularized the kind of work she had seen appellee doing for decedent, and after answering that she knew the value of the services she saw appellee doing, she was permitted to state what the value was. The ground of objection was that it was not shown that the witness knew the value of such services in the neighborhood in which the work was done.

The record fails to disclose how far away the witness lived from decedent's home. It appears that the witness lived in Huntington, and that the decedent did not, but whether the two places could be said to be in the same neighborhood cannot be determined from the evidence. From the record we cannot say the court erred in the admission of the testimony.

It is assigned as error that the amount assessed by the jury is excessive. But taking into consideration the character of the services performed by appellee, and especially her services during the last two or three years of decedent's life, it cannot be said that the amount assessed is excessive. We think the amount assessed by the jury is sustained by the evidence.

Judgment affirmed.