## McClure, Administrator, v. Lenz.

[No. 5,971. Filed April 11, 1907.]

1. Trial. — *Instructions.* — *Parent and Child.* — *Services.* — An instruction, in an action by a foster-child against the estates of the foster-parents for the value of services rendered, that if such parents had made declarations tending to show their purpose to bequeath and devise all of their property to her, this evidence should be considered only as tending to show that such parents intended to compensate her for her services, is not an invasion of the province of the jury and is proper. p. 57.

2. Work and Labor.—*Implied Contract.*—Where one is taken into the household of another, and treated as a member of the family, there is ordinarily no implied contract on the one hand to pay for board, care and shelter, or, on the other, for services rendered. p. 59.

3. Contracts.—*Implied.*—*Work and Labor.*—*Voluntary.*—No action will lie on an implied contract to pay for work and labor voluntarily performed without expectation of reward; and the hope of the laborer that such services will be rewarded does not aid the case. p. 59.

4. Parent and Child.—*Services.*—*Implied Contract to Pay for.*— Where the evidence shows that the childless foster-parents reared the plaintiff from infancy to womanhood; that she served them up to the date of her first marriage and, after separation, up to the time of her second marriage; that they made numerous declarations to friends and neighbors that the property should be hers at their death and that they were going to leave it to her by will, but failed to do so, and no agreement was made directly with her or any one representing her, and no showing that she relied upon such declarations to the friends, a judgment for such services is unsupported by the evidence. *Wallace* v. *Long*, 105 Ind. 522, partly overruled. p. 60.

From Putnam Circuit Court; *Presley O. Colliver*, Judge.

Action by Estella Lenz against William A. McClure, as administrator of the estates of Josephus Davis and Mary E. Davis, deceased. From a judgment for plaintiff, defendant appeals. *Reversed.*

*G. C. Moore* and *Thomas T. Moore*, for appellant.

*Silas A. Hays*, for appellee.

Rabb, J.—The appellant is the administrator of the estates of both Josephus Davis and Mary E. Davis, who was his

wife. The appellee filed a claim in the court below against the estate of each of the appellant's intestates for work and labor done and performed for decedents during their lifetime, and from the year 1891 to January 19, 1901. The claims against the two estates are in precisely the same language and cover the same services. The causes were consolidated in the court below, a jury trial had, resulting in a verdict for $500 in appellee's favor. Appellant's motion for a new trial in behalf of both the estates represented by him was overruled, and judgment rendered in appellee's favor on the verdict, and this ruling of the court is the only error assigned here.

Two instructions given by the court to the jury are complained of. The objections to one of them, however, has been obviated by a correction of the record. The 1. other instruction thus complained of relates to the application of certain evidence admitted by the court. The appellee was permitted to prove, over the objection of the appellant, declarations made by his intestates of a purpose on their part to devise all their property to the appellee, and a desire that she should have all their property. The court in this instruction informed the jury that these declarations were admitted for the sole purpose of tending to prove that said intestates intended to compensate the claimant for services rendered to them. It is insisted that this instruction of the court was an invasion of the province of the jury; that it informed the jury of what these statements tended to prove. We cannot agree with this contention of appellant. The instruction complained of simply indicated to the jury the matter in issue to which the evidence was to be applied. It had no other purpose, and was entirely competent. *Smith* v. *State* (1895), 142 Ind. 288; *White* v. *State* (1900), 153 Ind. 689.

The question that is seriously urged upon the consideration of the court for a reversal of the cause is the sufficiency of the evidence to sustain the verdict. There is no substan-

tial conflict in the evidence. It appears therefrom that ap-pellee's mother died when appellee was an infant; that her father took her, when she was about two years old, to the home of the appellant's intestates, and left her with them. making no provision whatever for her support, and, so far as the evidence discloses, practically abandoning her. The appellant's intestates had no children of their own. They were in very humble circumstances, but Josephus Davis owned forty acres of land, which witnesses value at from $10 to $20 per acre. Upon this they had their home, and off of this they made their living. The appellant's intestates took the homeless little waif, not only into their home, but into their hearts as well; and reared her as their own daughter, gave her all the privileges and opportunities their humble fortunes permitted; gave food, shelter, and parental care and love. She reciprocated their affection, and while she resided in their home did what she could to lighten their burdens. When about sixteen years of age she married. but continued to visit her old home, and when there would aid her foster-parents in whatever there was to do. She abandoned her first husband and went to Terre Haute to live. From this time on she was frequently at her foster-parents' home, just how much of the time is not clear from the evidence, but when there aided them in their work. On January 19, 1901, she married a second time, and it is up to the date of this marriage for which she charges services.

Both Josephus Davis and his wife repeatedly declared to their neighbors, friends, and relatives that they intended the appellee to have all their property after they were gone. On some occasions they would say that she had earned it. These declarations do not appear to have been made either to the appellee or in her presence. They were made to no one who represented her in any way. The evidence does not disclose that they were made for the purpose of inducing the appellee to remain with them, or to perform any service for them, nor does the evidence indicate that any services

that were performed by her were performed in reliance upon any declaration made by them that they intended her to have their property when they were gone.

Josephus Davis died about six weeks before his wife, and on his deathbed expressed the wish that all their property go to his wife while she lived, and that the appellee should take it when his wife was dead. There is no room to doubt from the repeated declarations of both the husband and wife that it was their desire that appellee should have their property. The husband made no will in his lifetime, and after his death his widow, although several times mentioning the fact that she desired someone to draw up papers for her, and requesting her brothers to get some one to perform that service, yet it was deferred, and no will was ever made by her. The theory of appellee's claim is that she is entitled to recover the value of the services rendered to them while she was a member of their family, and on the occasion of her visits to her foster-parents after her first marriage and prior to her second, as we understand it, on account of an implied promise on their part to compensate her.

Where one is taken into the family of another, and treated as a member of the household, there is ordinarily no implied obligation on the one hand to pay for board,

2. care and shelter, or, on the other, for services rendered. *Brown* v. *Yaryan* (1881), 74 Ind. 305; *Marquess* v. *La Baw* (1882), 82 Ind. 550; *Wright* v. *McLarinan* (1883), 92 Ind. 103; *Lockwood* v. *Robbins* (1890), 125 Ind. 398; *James* v. *Gillen* (1892), 3 Ind. App. 472; *Doan* v. *Dow* (1893), 8 Ind. App. 324; *Croxton* v. *Foreman* (1895), 13 Ind. App. 443.

Nor will an action lie to recover for services voluntarily rendered, without expectation at the time of the performance of the services that they will be paid for, and the

3. fact that the services have been rendered in the hope or with the design on the part of the person rendering them that they will be gratuitously rewarded by the per-

sons for whom they have been rendered, will not take the case out of the rule. *Warring* v. *Hill* (1883), 89 Ind. 497; *Crampton* v. *Logan* (1902), 28 Ind. App. 405.

4. In order to sustain the judgment of the court below the evidence must have been sufficient to sustain a judgment in favor of the appellee had she sued the appellant's intestates in their lifetime for the claim she has presented against their estates. The evidence in this case absolutely precludes the inference that there was at any time an express agreement on the part of the appellant's intestates to pay appellee for her services at the time she came to them a helpless little babe, or at any time thereafter. Nor does the evidence show that they at any time agreed with her, or with any one in her behalf, to make any disposition, by will or otherwise, in her favor, in consideration of her remaining with them or performing services for them. All their declarations with reference to making a will or disposing of their property in her favor were purely voluntary on their part, made to neighbors and friends, without any design of influencing her action, and had no contractual force whatever. And although the evidence shows that the Davises frequently said they wanted the appellee to have their property, and sometimes said they thought she had earned it, these statements and this desire on their part was prompted purely by their love and affection for appellee, and not because there was any legal obligation resting upon either of them. It is clearly manifest from the evidence that no declarations of this character made by the appellant's intestates influenced the action of the appellee in remaining with the Davises up to the time of her marriage, or influenced her in the performance of any duty she did perform for them while she lived with them. And after her marriage the services she rendered her foster parents upon the occasion of her visits to them, and while she was a temporary member of their family, were purely voluntary, and such services as a dutiful child would naturally render upon like occasions,

and were rendered without thought of compensation on her part.   The only evidence that tends in any degree whatever to support the appellee's contention is the declarations made by the Davises of their desire that appellee should have their property when they were gone.

Reference is made by appellee's counsel to the case of *Wallace* v. *Long* (1886), 105 Ind. 522, 55 Am. Rep. 222, as supporting the contention that such declarations rebut a presumption that services rendered under the circumstances disclosed by the evidence in this case were voluntarily rendered, without expectation of compensation.   In that case the learned judge who rendered the opinion of the court, in speaking of the evidence in the case that tended to support the view that it was the purpose of the intestate to make a provision for the plaintiff's ward by will, said:  "It does, however, serve to rebut any presumption which otherwise might have obtained, that the services rendered were to have been gratuitously performed, or that they were performed under the mere expectancy that the intestate would leave the plaintiff's ward a legacy."   The reference is a dictum of the judge.   It was not a question the court was called upon to decide, and is therefore not entitled to that consideration which a judicial declaration of the law by the court would receive; but it is entitled to great weight on account of the learning and ability of the distinguished jurist who rendered the opinion.   However, it is not to be presumed that the judge undertook in that case to lay down the rule that should apply to such a question, with all its conditions and limitations.   There can be no question but that a promise to make a will in favor of a person, made by another for the purpose of influencing his action and conduct in the matter of rendering services to the promisor,   would undoubtedly repel any presumption that services rendered under such inducement were gratuitously rendered.   Or if one was induced to render services by declarations of a party not in the form of an exact promise to provide for one in his will,

and the declarations were made for the purpose of inducing the person to render the services charged for, such declarations would undoubtedly repel the presumption that the services so rendered were voluntarily rendered, even where the parties were members of the same family. But, to have such effect, the promises or declarations must have been made under such circumstances as would reasonably induce the person in whose favor they were made to rely upon them, and the services must have been performed in reliance upon them. They must have been made to the party rendering the services, or to some one in his behalf, or they must have been made in his presence, and with the purpose and intention that they should be acted upon by him.

In this case the declarations of a purpose to devise the intestates' property to the appellee were not made either to the appellee herself, or to any one in her behalf. They were not made with the purpose that they should be relied upon by her. They were made in casual conversations with neighbors and friends, not shown to be in the presence or hearing of the appellee. And there is nothing in the evidence to indicate that any of the services performed by the appellee for appellants at any time were performed in reliance upon any such declarations, or that the declarations themselves were made with the thought that any legal obligation was resting upon the intestates to make such disposition of their property. It is perfectly clear that the declarations were made because the intestates regarded the appellee with the love and affection which they would have for their own child, and that the services rendered by appellee to the appellant's intestates were rendered from the same motive, not from any merely mercenary consideration upon either side.

It is unfortunate that these people died without making any provision disposing of their property in the way they wanted it to go, but the courts have no power to make wills, and when people die without having disposed of their prop-

erty in the way they desire it to go, the court cannot control its descent under the law.

On the question as to the merits of appellee's claim as between herself and these people now dead, who were her foster-parents, there can be no question but that she received from them fully as much as the value of her services were worth to them. The only support the judgment in this cause could have, from any consideration at all, would be the consideration that it would be carrying out the will of these people who are represented by the appellant; not that there was any just claim against them, when they died, in favor of the appellee.

The judgment is reversed.

## CONCURRING OPINION.

ROBY, J.—I am constrained by the legal propositions stated in the opinion and their application to the facts of the case, to concur in the result. If the findings showed that appellee's father was deterred from taking her away from Mr. and Mrs. Davis by a promise that she should inherit their property, or be otherwise compensated, then I would not agree to a reversal. They intended that she should have all the property. Some one may have a legal right to prevent her receiving the smallest part of it, but those invoking the letter of the law in that behalf must also abide by the law in its strictness.