Jessup *v.* Jessup, Administrator.

---

## JESSUP *v.* JESSUP, ADMINISTRATOR.

[No. 2,089.   Filed March 11, 1897.]

PARENT AND CHILD.—*When a Liability for Services Rendered.*— Where a parent and his or her adult children live together as members of the same family, there is no implied undertaking on the part of either to pay for services; but such undertaking may arise not only from an express contract, but it may be inferred from surrounding circumstances.  *p. 185.*

SAME.—*Decedent's Estates.—Claim of Mother for Caring for Her Adult Son.*—An adult son, whose mental and physical condition disqualified him from rendering any service, lived with and was cared for by his mother with the express understanding that she

was to be compensated therefor. The son died intestate, and the mother filed a claim against his estate for such services, which was allowed and paid by the administrator. *Held,* that in the absence of a showing that the amount paid for the services was excessive, and that such services could have been performed for less, that the claim was a proper charge against the estate. *p. 186.*

GUARDIAN AND WARD.—*Appointment of Guardian for Person Alleged to be of Unsound Mind. When Void.—When a Guardian Illegally Appointed may be Regarded as Trustee.*—The appointment of a guardian for a person alleged to be of unsound mind, where the appointment is made without service of process upon, and in the absence of such person is null and void; but one so appointed as guardian acts under color of right and will be regarded as a trustee and will have an equitable right to be reimbursed for all reasonable expenses properly incurred in the execution of the trust. *pp. 186–189.*

From the Greene Circuit Court. *Affirmed.*

*I. H. Fowler* and *W. A. Pickens,* for appellant.

*Emerson Short,* for appellee.

WILEY, J.—Appellee was administrator of the estate of John W. Jessup, deceased, by virtue of an appointment by the Greene Circuit Court. September 2d, 1895, he filed his report in final settlement. The same was endorsed for hearing at a time fixed, and notice given. Appellant appeared and filed exceptions to the report, and also to preceding reports filed by him. The report and the exceptions were submitted to the court for determination, and at the request of appellant, the court made a special finding of facts, and stated its conclusions of law thereon. In so far as the facts found by the court are necessary for the decision of this case, we quote, in brief, from the special findings, as follows:

1. That in 1877, the decedent, John W. Jessup, was a resident of Greene county, Indiana, 30 years of age, and owned an estate of the probable value of fifteen thousand dollars, and that he was insane and incapable of managing his own estate.

2. That at the September term of the Greene Circuit Court, 1877, a complaint was filed, charging that the said Jessup was insane and incapable of managing his own estate; that the clerk of said court filed an answer in general denial, and upon trial it was adjudged that said decedent was of unsound mind, and incapable of managing his own estate, but that said proceedings were without the issuing, or service of any process or notice on the said Jessup, and that he was not personally present in court.

3. That the court thereupon appointed one Wilbur A. Hayes, guardian of said Jessup as an insane person, who filed his bond, qualified, took upon himself the execution of said trust and filed an inventory thereof, showing the value of said estate to be $11,-765.41.

4. That he took possession of all of said estate and continued in said trust until January 26, 1888, when he filed his final report and resigned his said guardianship; that said report was approved and the guardian discharged.

5. That during said time said Hayes served as such guardian he made disbursements aggregating $2,-402.42; that he returned to his said ward, or to the court in trust for the said ward, property, notes, cash, etc., aggregating $9,362.99, thereby accounting for the estate which came into his hands the entire amount of $11,765.41.

6. That about January 1, 1888, while said trust was under the management of said Hayes, said John W. Jessup had an apparent lucid interval; that he took charge of his estate, including a store at Winslow, Indiana, and managed his business with fair prudence until May 1, 1888, when he was taken in charge and lawfully placed in the hospital for the insane, where he remained until September 26, 1889, when he was

thought to be in a dangerous condition and was taken to the home of his mother at Worthington, Indiana.

7. That during the apparent lucid interval mentioned in the last preceding finding, he married the exceptor, Ella Jessup, January 10, 1888; that she had no knowledge of his mental condition, or that any one had ever acted or assumed to act as his guardian; that they were lawfully married and that he died May 22, 1893, without issue of his body, leaving as his sole heirs his wife, Ella Jessup, the exceptor, and his mother, Charlotte Jessup.

8. That on May 1, 1889, the Greene Circuit Court appointed one J. O. Burbank as guardian of decedent, as successor of said Hayes; that he inventoried said estate and by said inventory the personal assets of said estate were valued at $6,638.62; that the same was a full and fair statement thereof; that he gave bond and entered upon his duties and so acted until May 21, 1890, when he made his final report, resigned his said trust and was discharged therefrom.

9. That during the time he was, and acted as guardian he made expenditures aggregating $6,638.62, including a deficit in the sale of the stock of goods of $684.98; including, also, amount returned to the clerk for the benefit of the ward, $4,264.72, accounts and cash returned to the clerk, $266.32.

10. That on May 20, 1890, the court appointed Fred L. Jessup, a brother of decedent, as guardian to succeed the said Burbank; that he filed his bond, was qualified, and entered upon the discharge of his trust and continued to act until May 22, 1893, when said ward died.

11. That said last named guardian filed his inventory of said estate showing its value to be $6,191.27, and that it was a full and fair statement and valuation of the personal estate of said Jessup.

12. That the said Ella Jessup, in August, 1895, commenced a proceeding in the Greene Circuit Court against John W. Jessup, Charlotte Jessup and Fred L. Jessup to set aside and vacate the order and judgment of the said court in declaring the said Jessup to be of unsound mind and appointing a guardian therefor, and upon a trial of said cause the finding and judgment of said court was against the said Ella Jessup, and that she appealed from said judgment so entered against her to the Appellate Court, which said court reversed the said judgment and finding of the Greene Circuit Court and declared that the original judgment appointing a guardian for the said Jessup as an insane person was void and without effect, for the reason that no process or notice had been issued or served upon him, and he was not present in court at the time said judgment was rendered.

13. That said Fred L. Jessup, while acting as such guardian, made expenditures for and on account of said estate aggregating $1,881.49, which left a balance in his hands as such guardian of $4,309.78.

14. That all the doings of each of said guardians, Hayes, Burbank and Jessup, were done by each of them in a fair and prudent manner, in good faith, and under the belief that their said appointments by the Greene Circuit Court were regular and lawful, and that all their reports as such guardians to the Greene Circuit Court were by said court in all things approved, prior to the said decision of the Appellate Court and subsequent trial mentioned in the preceding finding.

15. That the several sums expended by said guardians, as shown by their respective reports, and by the findings herein, for merchandise, bills, purchase money on real estate, clothing and comforts for said John W. Jessup, and the payment to one Cockerly for

services rendered said estate, for taxes, insurance, repairs of real estate, etc., so far as previously contracted by said John W. Jessup, were his valid obligations and that those not so contracted, but which were paid by said guardians, were reasonable charges for the matters for which they were expended, and the expenditures made by said guardians for insurance and repairs to real estate, were reasonably necessary for the preservation of the property of said John W. Jessup.

16. That the sums expended by said several guardians in the management of the business and estate of said John W. Jessup for his board and keeping, care, costs, attorney's fees and guardians' fees and expenses were reasonable charges for such services.

17. That the items of money paid by said several guardians to the said John W. Jessup were needed by said John W. Jessup and paid under proper and prudent circumstances.

18. That the said John W. Jessup died in Greene county, Indiana, May 22, 1893, intestate, and on May 26, 1893, the said Fred L. Jessup was, by the Greene Circuit Court, duly appointed and qualified as administrator of the estate of John W. Jessup, and took upon himself the discharge of the duties of said administration; that as such administrator he charged himself with the balance in his hands, upon filing his said final report as guardian, in the sum of $4,309.78, and inventoried other personal property in the sum of $50.00, which two sums then comprised all his personal estate.

19. That at the time said John W. Jessup was taken from the insane hospital to the home of his mother, his said wife, Ella Jessup, asked and demanded of the said Burbank, who was then acting as his guardian, and also of the said Charlotte Jessup, that she be al-

lowed to nurse, care and keep him, which was by them refused, and that the said Ella Jessup was then able and willing and ready to so nurse, care and keep said John W. Jessup; that after the appointment of the said Fred L. Jessup as guardian, as aforesaid, the said Ella Jessup was still able, ready and willing to nurse, care and keep said John W. Jessup, and then made a like request and demand of the said Fred L. Jessup, and also of the said Charlotte Jessup, which was by them refused.

20. That the said Fred L. Jessup, as such guardian, made a contract with the said Charlotte Jessup to nurse, care and keep the said John W. Jessup for hire; that under said contract the said Charlotte Jessup did nurse, care for and keep the said John W. Jessup to the date of his death, and received pay for the same from the said Fred L. Jessup, as administrator, in the sum of $477.00, which was a reasonable charge for the services rendered, and was paid on claim filed by said Charlotte Jessup in the Greene Circuit Court, and allowed by the said court.

21. That said Fred L. Jessup at the time of his appointment, charged himself with the sum of $4,359.78, and that he subsequently charged himself with an additional sum of $406.75, which was interest collected on outstanding notes, making a total charge against him, as such administrator, $4,766.53; that said administrator has made two reports, which includes his final report, and which show in detail the total amount paid out by him to be $2,760.16.

22. That all the money paid out by guardians and administrator for boarding, nursing, caring for and keeping said John W. Jessup was paid for such services rendered after the said John W. Jessup became insane and while he was in fact insane.

23. That the said Charlotte Jessup, mother of the

said John W. Jessup, at the time she nursed and cared for him, as set forth in these findings, owned a house and lot in the town of Worthington, Indiana, of the value of $800.00, and that the same was all the property and estate she owned.

The court also found that there were certain heirlooms belonging to said decedent, which the administrator had not inventoried or given any account of, consisting of a wardrobe, watch and diploma,—that should be turned over to the appellant, which was done.

Upon the foregoing facts as found by the court, the court stated its conclusions of law. For the purpose of the decision of this case, we need not refer to but two of the conclusions of law as stated, to-wit: the third and fourth, which are as follows:

"Third. That the final report of said Fred L. Jessup as administrator, is lawful and should be in all things approved and that the administration of said estate by the said Fred L. Jessup should be approved except as to his failure to turn over to said Ella Jessup the said wardrobe, watch and diploma.

"Fourth. That upon the delivery of possession of the same to the said Ella Jessup by said administrator, said estate should be adjudged settled as shown by said final report."

The appellant excepted to each conclusion of law and the court entered an order declaring said estate settled, and discharged the administrator; and to this order and judgment of the court the appellant also excepted. The appellant then moved the court for a judgment in her favor on each and all of the special facts found and on each and all of the conclusions of law as stated by the court; which motion was overruled, and she excepted.

The appellant has assigned four errors in this court,

but we think that the only one that need be discussed is the first, and that is, that the court erred in each and every conclusion of law.

Appellant admits that, notwithstanding the proceedings declaring Jessup insane, and appointing guardians over his person and property, were void, the greater part of the expenditures of the three several guardians appointed, while acting as such, were correct, on the ground that they were in the interest of the estate; but she complains that there is no warrant in law to uphold the several amounts allowed the guardians for their expenses and services, and amounts paid out as attorney's fees and costs, and the amount of $477.00, paid to Charlotte Jessup, the mother of the decedent, by the administrator. Objection is urged to the last item, on the ground that where a parent renders services for a child, or *vice versa,* there is no liability to pay, in the absence of an express or implied contract.

We agree with appellant that this is the general rule, but there are exceptions to it. This rule has its foundation in the sacred and close relations of the family. The rule, briefly stated, is, that where a parent and his or her adult children live together as members of the same family, there is no implied undertaking on the part of either to pay for services; but such undertaking may always arise, not only from an express contract, but it may be inferred from surrounding circumstances. *Story* v. *Story,* 1 Ind. App. 284; *Hilbish* v. *Hilbish,* 71 Ind. 27; *Smith* v. *Denman,* 48 Ind. 65; *King's Admr.* v. *Kelly,* 28 Ind. 89.

The Supreme Court, speaking by Olds, J., in *Hill* v. *Hill,* 121 Ind. 255, state the rule as follows: "Where near relatives, either by blood or marriage, reside together as one common family, the one furnishing board, lodging, clothing or other necessaries or com-

forts of life, and the other in return renders services, a presumption arises that neither party intended to receive or to pay a compensation for the board or other necessaries or comforts furnished on the one hand or services rendered on the other."

In legal contemplation, under the facts as found and stated by the court, Charlotte Jessup and the decedent were not living together as one common family, for the decedent had, long before he was declared insane, left his parental home, and he was not a member of his mother's family in any legal or domestic sense. It does not appear from the facts found that he was rendering her any service, but that he was there in a state of mind and condition of body that rendered him wholly incapable of rendering any service whatever to his mother, and that she rendered the services in good faith and with an express understanding she was to be compensated therefor. In the absence of a showing that the amount paid for the services of his mother was excessive, and that such services could have been performed for less expense to his estate, we are of the opinion that the allowance to her was a proper charge against his estate, and that the court did not err in allowing the administrator therefor.

Appellant also contends that the court below should have disapproved the final report of appellee as administrator, and directed him to proceed against the several guardians that preceded him, in their individual capacities, to recover from them, for the use and benefit of the estate, the several amounts charged and allowed them for their personal services and expenses, and for the amounts paid out for attorney's fees and costs.

We cannot agree with appellant in this contention. The court found and stated in its special findings, that

at the time the first guardian was appointed the decedent was insane and incapable of managing his own estate; that he remained in that condition up to the time of his death, except "an apparent lucid interval * * * during which time he managed his business with fair prudence," etc. And that all of the items and amounts paid out by said guardians in managing and conducting said trust were reasonable and just charges against his estate.

It is not contended that any fraud was practiced on the part of the guardians; that they profited at the expense of the trust, nor that they were not acting in good faith. All their acts and doings were reported to the court having jurisdiction of the subject-matter, and were approved; and while they were chargable with the knowledge of the infirmity in the proceedings appointing them, a court of equity will not lend its aid to hold them personally liable for doing the very things that the court declares to have been done in the best interests of the trust, and for which they were presuming to act.

The Greene Circuit Court having, in a proceeding without notice, or the presence of the decedent in court, declared him insane, and appointed for his person and property a guardian, was without jurisdiction over his person, and the proceedings were a nullity, and void. *Jessup* v. *Jessup*, 7 Ind. App. 573.

The guardians appointed by the court were at least acting under color of right and did in fact manage the estate of decedent with fidelity, prudence and care, and with reasonable economy. Under such facts we must regard them as trustees.

In the well-considered case of *Curran* v. *Abbott*, 141 Ind. 492, the Supreme Court, speaking by Monks, J., said: "It is well settled law that a trustee has an equitable right to be reimbursed for all reasonable ex-

penses properly incurred in the execution of his trust, and that the expenses of a trustee in the execution of his trust are a lien upon the estate."

In Perry on Trusts, it is said: "Trustees have an inherent equitable right to be reimbursed all expenses which they reasonably and properly incur in the execution of the trust. * * * If a person undertakes an office for another in relation to property, he has a natural right to be reimbursed all the money necessarily expended in the performance of the duty. * * * Thus a trustee would be reimbursed all his necessary traveling expenses, and all reasonable fees paid for legal advice in the discharge of his duties. And this rule would be applied, although the trust subsequently was declared void, if the trustees were without blame in the matter. So trustees will be allowed all the expenses of litigation, * * * and all costs which they are forced to pay to strangers, if the litigation was forced upon them, or was necessary for the protection of the estate. * * * Allowances for legal expenses and costs are always within the discretion of the court; and such claims can be modified and reduced, if in the judgment of the court they are unreasonable." Perry on Trusts, section 910.

The adjudicated cases are in harmony with the principles stated by Mr. Perry. *Jones* v. *Dawson*, 19 Ala. 672; *Love* v. *Morris*, 13 Ga. 165; *Rensselaer, etc., R. R. Co.* v. *Miller*, 47 Vt. 146; *McElhenny's Appeal*, 46 Pa. St. 347; *Wilson's Appeal*, 41 Pa. St. 94; *Worrall* v. *Harford*, 8 Ves. 3; *Dawson* v. *Clarke*, 18 Ves. 247.

Applying these principles to the facts in this case, it seems to us that it would be a harsh measure of justice and most unconscionable and inequitable to say that the several trustees who undertook to subserve and protect the interests of the estate of the

decedent, should be held personally liable for all moneys allowed them by a court of equity for their services and expenses and costs reasonably incurred.

The proof to our mind is very satisfactory that they each earned all that the court allowed them and that they did not in any manner dissipate the estate, but, on the contrary, protected and fostered it to the best interests of the decedent.

With the fact before us that the management of the trust in the hands of these several trustees was faithful, honest and fair, and that they acted in good faith and accounted for all the assets of the estate that came into their possession, we are clearly of the opinion that the court below exercised a sound and wise discretion in approving the final report of the administrator and discharging him from any further liability.

There is no error in the record and the judgment is affirmed.