## VAUGHT *v.* ESTATE OF MARY BARNES, DECEASED.

[No. 3,499. Filed November 26, 1901. Rehearing denied May 1, 1902. Mandate modified June 20, 1902.]

EXECUTORS AND ADMINISTRATORS.—*Claims.*—*Care of Decedent.*—*Trial.* —*Verdict.*—*Answers to Interrogatories.*—Answers to interrogatories in a proceeding by a daughter to enforce a claim against her mother's estate for board and care of decedent that claimant had no contract with decedent and no amount was promised claimant therefor, and that decedent for a number of years prior to her death lived among her children, of whom claimant was one, are not in irreconcilable conflict with a general verdict for plaintiff, it not being shown that deceased was living with plaintiff as a member of her family.

From Clark Circuit Court; *J. K. Marsh*, Judge.

Action by Zerelda Vaught on a claim against the estate of Mary Barnes, deceased. From a judgment for defendant *non obstante veredicto*, plaintiff appeals. *Reversed.*

*H. A. Burtt* and *J. E. Taggart*, for appellant.
*W. H. Watson*, for appellee.

WILEY, J.—Appellant filed a claim against the estate of Mary Barnes, deceased. It was not allowed by the administrator, and was regularly passed to the trial docket, where the case was tried by a jury, resulting in a general verdict for appellant. With the general verdict the jury found specially as to specific facts by way of answers to interrogatories. Appellant's motion for judgment on the general verdict was overruled. Appellee's motion for judgment *non obstante veredicto* was sustained. The rulings upon these motions are the only errors assigned, and may properly be considered together.

No attempt is made to bring the evidence into the record.
Appellant's claim was for boarding, lodging, nursing, wash-
ing, caring and providing for decedent for a period of fifty-
four weeks, at $10 per week. No answer was filed, and
the general verdict for appellant was for $275. The in-
terrogatories submitted to, and answered by, the jury are
as follows: "(1)   Did the claimant Zerelda Vaught have
any contract with the decedent Mary Barnes during her
lifetime, for boarding, lodging, nursing, and caring for said
decedent? Ans. No. (2) If the claimant had any con-
tract with the decedent during her lifetime, when and
where was such contract made, and how much per week
was claimant to receive from decedent's estate? Ans. No
contract made and no amount promised. (3)   What rela-
tion was decedent Mary Barnes to claimant Zerelda
Vaught? Ans. Daughter. (4)   Did not Mary Barnes,
the decedent, for a number of years prior to her death,
live among her children, of whom Zerelda Vaught was
one? Ans. Yes."

The simple question here for decision is, is the general
verdict in irreconcilable conflict with the answers to the in-
terrogatories?   If this inquiry can be answered in the af-
firmative, then the judgment must stand, for the rule is,
that where the general verdict and answers to interrogato-
ries are in irreconcilable conflict, the latter will control, and
the former must yield.   Notwithstanding this imperative
rule, we must indulge every reasonable intendment in favor
of the general verdict.   If, in fact, the evidence showed that
the deceased was living with appellant as a member of her
family, to entitle her to recover it was necessary for her
to show that there was an express contract by which she
was to be remunerated, or to show facts that would imply
a promise on the part of decedent to pay.   Where a parent
and adult child live together as members of the same fam-
ily, there is no implied undertaking on the part of either
to pay for services, but such undertaking may arise, not

only from an express contract, but it may be inferred from surrounding circumstances. *Jessup* v. *Jessup,* 17 Ind. App. 177, and authorities there cited. So indulging every reasonable intendment in favor of the general verdict, we must presume that the evidence disclosed facts either establishing an express contract on the part of decedent to pay, or circumstances and surroundings from which it could have been inferred that she was to pay. In other words, by the general verdict, the jury found every fact in favor of appellant essential to her recovery. By the answer to the first interrogatory the jury found that there was no contract between appellant and her mother by which the latter was to compensate the former for board, washing, care, etc. This finding does not necessarily preclude appellant's recovery.

In answer to the fourth interrogatory the jury found that the decedent, for a number of years prior to her death, lived among her children, and that appellant was one of them. This interrogatory fails to elicit a material fact which was necessary to overthrow the general verdict, and that is that it is not shown that she was living with appellant as a member of her family. It is only where near relatives are living together as a common family that the presumption arises that neither party intended to receive or to pay compensation for board, necessaries, or comforts furnished on the one hand, or services rendered on the other. By the general verdict this presumption is overcome, and hence the general verdict and answers to interrogatories are not in irreconcilable conflict.

Again, the rule prevails in this State that the general verdict must stand if it can be upheld under any supposable state of facts provable under the issues. *Hoggatt* v. *Evansville, etc., R. Co.,* 3 Ind. App. 437; *Sheeks* v. *Fillion,* 3 Ind. App. 262; *Weller* v. *Bectell,* 2 Ind. App. 228; *Hoffman* v. *Toll,* 2 Ind. App. 287.

Judgment reversed, and the court below is directed to render judgment on the general verdict for appellant.

## ON PETITION FOR REHEARING.

PER CURIAM.—Appellee has petitioned for a rehearing. We are of the opinion that the conclusion reached in the original opinion is correct upon the proposition that the judgment should be reversed, but have concluded that the mandate should be modified. The petition for a rehearing is overruled, and the court below is directed to grant appellant a new trial if applied for within sixty days from May 1, 1902.