## WAECHTER, ADMINISTRATOR, *v.* WALTERS.

[No. 6,598.   Filed March 17, 1908.]

1. WORK AND LABOR.—*Parent and Child.—Implied Contracts.*—A foster child is not entitled to compensation from his foster parents for work and labor, unless the services were rendered with the expectation of reward, and received with the expectation of a recompense. p. 409.

2. SAME.—*Parent and Child.—Implied Contracts.—Damages.—Evidence.*—Where the evidence shows that plaintiff was received into decedent's home as a member of the family, no agreement being made as to compensation for services, and the decedent often expressed to others an intention of providing for plaintiff in her will, and said upon his attaining the age of twenty-one years, which was one or two years before decedent's death, that plaintiff would not have to work for nothing, a verdict for $3,000 is excessive. p. 411.

From Decatur Circuit Court; *Marshall Hacker,* Judge.

Action by William Walters against Anthony Waechter, as administrator of the estate of Mary A. Bentler, deceased. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Tremain & Ewing* and *Gavin & Davis,* for appellant.
*Hugh Wickens* and *John E. Osborn,* for appellee.

RABB, J.—Appellee filed a claim against the estate of appellant's intestate for the sum of $3,000, for work, labor, assistance, care and attention alleged to have been rendered the deceased by appellee from January, 1902, to June 14, 1906. The cause was tried by a jury, and verdict returned in favor of appellee for the full amount of the claim.   Appellant's motion for a new trial was overruled, and judgment ren-

dered on the finding. The overruling of appellant's motion for a new trial is assigned as error here. The reasons set forth in the motion for a new trial are that the verdict is contrary to the evidence, and that the damages are excessive.

There is no dispute in the evidence. It shows that in 1892, when the appellee was eight or nine years of age, both his father and mother died; that at that time appellant's

1. intestate and her husband resided on her husband's farm in Decatur county; that they were childless, and took appellee into their household at that time as one of their family; that they gave appellee the comforts of a good home, parental care, board and clothing, and sent him to school; that he continued to live with them as a member of their family until the husband died in 1896, and that he continued to live with the intestate at the family homestead until her death, June 14, 1906. The husband made a will, by which he left his wife the use of the farm of 160 acres during her life, and $3,100 in money. There was no evidence tending to prove that at the time the appellee was taken into the family of the Bentlers, and given a home, a contract of any kind was entered into between the Bentlers and any person on behalf of the appellee that they were to pay him for services he might render them, or that they should receive compensation for anything they did for the boy. A great number of witnesses have testified to conversations had with the intestate, in which she told them of her affection for the appellee; that he was a good boy, and she intended that he should have all she had; that she intended to provide for him in her will. None of these witnesses, however, would say, though the question was pointedly asked them, that the decedent had ever said that she had promised appellee that if he remained with her she would either give him her property, or make a will and bequeath her property to him, or that she had made any promise of any kind whatever to the appellee, or that the conversations testified to by the witnesses were had in his presence, or

ever communicated to him by the witnesses.   John H. Reth-
lock testified that about the time appellee was twenty-one
years of age, which was but a year or two before the de-
cedent's death, Mrs. Bentler told him that appellee was talk-
ing about going away, and that she had told him (appellee)
he could go, but if he would stay he would not have to work
for nothing, but that she would recompense him; and the
evidence shows that from the time he was twenty-one he
farmed the place, Mrs. Bentler furnishing the teams and
machinery, and giving appellee one-half the produce, and
that shortly before her death she told one of the neighbors
that she wanted appellee to have the whole crop then on the
place, and all they had in partnership, which seems to have
comprised some hogs.   After her death appellee was permit-
ted to retain all the crop and the hogs.   The evidence shows
that appellee was kind and attentive to his foster mother;
that he rendered her such services as a dutiful and consid-
erate son might naturally be expected to render to one who
had taken a mother's place in caring for him when he was
in need of such parental care.

There is no contention regarding the law as applied to this
case.   It is too well settled to admit of controversy.   Where
one is taken into the household of another and treated as a
member of the family, there is ordinarily no implied obli-
gation to pay for services on the one hand, or for board and
shelter on the other.   Such obligation is never implied un-
less the circumstances show that at the time the services
were rendered there was an expectation on one side to
charge for the services, board, shelter and care, and on the
other hand to pay for the same.   All the facts and circum-
stances developed by the evidence in this case absolutely
repel the inference that the services for which appellee here
sues this estate were rendered for hire, or that there was
any expectation on his part, at the time they were ren-
dered, to charge therefor, or any intention on the part of
the decedent to pay the appellee for them, unless it might

be such services as he rendered her after attaining his majority. Up to that point of time this case is identical with the case of *McClure* v. *Lentz* (1907), 40 Ind. App. 56.

The sum allowed by the jury is so excessive as to strike the court, at first blush, that such allowance must have proceeded from either mistake or prejudice on the part of the jury. Undoubtedly the jury in fixing the amount of appellee's recovery assumed that he should be allowed for all services rendered by him for the intestate at any time within the limits of the dates fixed in the claim. We think the motion for a new trial should have prevailed, for the reason that the damages assessed by the jury were excessive.

Cause reversed, with instructions to the court below to grant a new trial.