## SHUTTS, ADMINISTRATOR, *v.* FRANKE.

[No. 6,379. Filed October 6, 1908.]

WORK AND LABOR.—*Implied Contracts.*—*Parent and Child.*—*De-
cedents' Estates.*—Where a child, upon the death of its mother,
was taken by its father and placed in the home of its grand-
mother, the father paying for its care until it began to attend
school, in the absence of some promise of reward by the grand-
mother made to such child, or of some expectation of reward by
the child when the service for the grandmother was performed,
such child has no legal right of recovery for services rendered to
the grandmother; a family relation having existed at all times
between them.

From Dearborn Circuit Court; *George E. Downey,* Judge.

Action by Mary E. Franke against Frank B. Shutts, as
administrator of the estate of Mary Franke, deceased. From
a judgment for plaintiff, defendant appeals. *Reversed.*

*Givan & Givan* and *Frank B. Shutts,* for appellant.

*Hugh D. McMullen, Harry R. McMullen, William W.
Spencer* and *Edwin W. Spencer,* for appellee.

RABB, C. J.—Appellee filed a claim against the estate
represented by appellant for services alleged to have been
rendered by the appellee for the decedent in her lifetime,
at her instance and request. In addition to the defenses
which the statute authorizes to be made without special plea,
the appellant filed a set-off for board, nursing, lodging,
clothing and care furnished the appellee by the decedent,

which was met by appellee with a general denial.  The issues were tried by a jury, a verdict in favor of appellee for $1,200 returned, appellant's motion for a new trial overruled, and judgment rendered on the verdict.

The question presented by the record is the sufficiency of the evidence to sustain the verdict.

There is no substantial conflict in the evidence.  It shows that the deceased was the claimant's grandmother; that the claimant's mother died when the claimant was about eighteen months old, and that her father brought her to the house of the decedent to be taken care of by the grandmother, and that she continued to reside with, and as a member of, the decedent's family until the decedent's death; that during the infancy of appellee her father sent the grandmother money to pay for her support, but sent none after appellee became old enough to go to school.  No pretense is made that anything was paid to the decedent for the support of the appellee during the time for which the services were rendered.  The evidence shows that the decedent was in bad health for many years prior to her death, and that the appellee had sole care of her; that she did all kinds of work for her, and was kind and attentive; that the deceased was much attached to the appellee, and was unwilling that her father should take her upon his remarriage; that she often said that she intended to make provision for the appellee, which statements are not shown to have been made to the appellee, or intended by the deceased to influence her to remain with the deceased or to perform any services for her.  It is perfectly manifest that no services were performed by the appellee in reliance on any such statements made by the deceased, but that what services were rendered by appellee for the deceased were influenced by a higher motive than hope or expectation of pecuniary reward; that they were inspired by the affection that the appellee bore to her grandmother, and they were such services as a dutiful and affectionate child naturally renders

to an afflicted and helpless parent. This is clearly shown by the actions, words and conduct of the appellee during the lifetime of her grandmother.

It is in evidence that sometime before her death the old lady called one of her sons to her, and, in the presence of the appellee, delivered into the son's hands the sum of $1,000, to be by him paid over to appellee after the grandmother's death, which was done. The appellee well understood the transaction, and not only made no pretense that this or any other sum was due her from her grandmother, but insisted on her grandmother's keeping the money herself and not giving it to her. She understood it was a gift and not a payment. Neither she nor her grandmother had any thought whatever of there being a legal debt owing from the grandmother to the appellee; and in order that a valid and enforceable claim could have arisen in favor of the appellee there must have been an expectation on the part of the claimant at the time the services were rendered that they were to be paid for. *Fuller* v. *Fuller's Estate* (1898), 21 Ind. App. 42; *Brown* v. *Yaryan* (1881), 74 Ind. 305; *Marquess* v. *La Baw* (1882), 82 Ind. 550; *James* v. *Gillen* (1892), 3 Ind. App. 472; *Doan* v. *Dow* (1893), 8 Ind. App. 324; *Croxton* v. *Foreman* (1895), 13 Ind. App. 442; *McClure* v. *Lenz* (1907), 40 Ind. App. 56; *Waechter* v. *Walters* (1908), 41 Ind. App. 408.

We think that however deserving the appellee is shown to have been, the evidence fails to show a legal liability against the estate in her favor.

Judgment reversed.