## MILLER, ADMINISTRATOR, *v.* MILLER.

[No. 7,077.　Filed March 10, 1911.]

1. APPEAL.—*Determination of.—Presumptions.*—The presumption, on appeal, is that the trial court's action was proper. p. 241.

2. APPEAL.—*Weighing Evidence.*—Where there is some evidence tending to support every material allegation in the complaint, a judgment for the plaintiff will not be disturbed. p. 241.

3. PARENT AND CHILD.—*Contracts.—Implied.—Question for Jury.*—Whether a child's admissions were of such a nature as conclusively to show that she expected no pay from her mother for care and services, there being evidence of the mother's promise to pay therefor, is a question for the jury. p. 242.

4. PARENT AND CHILD.—*Voluntary Services.*—A child cannot recover for services rendered to its parent, where such services were rendered without any hope or expectation of remuneration. p. 243.

5. PARENT AND CHILD.— *Services.— Presumptions.— Burden of Proof.—Instructions.*—In an action by a daughter against the administrator of her mother's estate for services rendered to the

mother, an instruction that the plaintiff may recover upon proof of an express promise to pay therefor, or of circumstances from which the law will imply a contract to pay therefor, is not erroneous, where it is followed by an instruction showing what facts are necessary to form the basis of an implied contract, and also showing that the presumption is against an implied contract and that the burden is upon the plaintiff to establish the facts overthrowing such presumption and establishing the contract.   pp. 243, 244.

6.  PARENT AND CHILD. — Services.—Contracts.—Jury.—Appeal.— The verdict is ordinarily conclusive as to the mixed question of law and fact whether a child is entitled to recover for services rendered to the parent, where the jury is properly instructed.   p. 244.

7.  PARENT AND CHILD. — Services.—Contracts.—Admissions.—Instructions.—In an action by a daughter against the administrator of her mother's estate for services performed for her mother, an instruction as to the legal effect of certain alleged admissions of the plaintiff, without considering any other evidence in the case, is not prejudicial, where other instructions covered the law of the case otherwise.   p. 245.

8.  PARENT AND CHILD.—Services.—Contracts.—Instructions.—An instruction, in an action by a daughter against the administrator of her mother's estate for services rendered to her mother, that the jury, in estimating the amount of recovery, should consider any benefits the daughter might have received from her mother, and any use of her mother's farm beneficial to the daughter, and all other facts which will aid in determining the reasonable amount due, is not prejudicial to the estate.   p. 246.

9.  TRIAL.—Instructions.—Duplication.—It is not erroneous to refuse to duplicate instructions.   p. 246.

10.  TRIAL.—Verdict.—Contrary to Law.—Where the verdict was supported by some evidence, within the issues, it is not contrary to law.   p. 246.

11.  WITNESSES.—Competency.—Physicians. — Declarations of Patient.—The declaration of a mother as to her intention of paying her daughter for services may be established by the testimony of an attending physician, where such declaration was not called for by professional treatment.   p. 247.

12.  WITNESSES.—Competency.—All persons are competent witnesses except as otherwise provided by statute.   p. 247.

From Elkhart Superior Court; Vernon W. VanFleet, Judge.

Action by Ella B. Miller against Andrew J. Miller, as administrator of the estate of Elizabeth Miller, deceased.

From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Lloyd L. Burris* and *E. A. Dausman,* for appellant.

*Benjamin F. Deahl, Anthony Deahl, Ray Deahl, Elam & Fesler* and *Fitzpatrick & Fitzpatrick,* for appellee.

MYERS, C. J.—Appellee filed a claim against the estate of Elizabeth Miller, deceased, for services rendered to decedent. After the claim was refused by the administrator, it was transferred to the trial docket of the Elkhart Circuit Court. The venue was changed to the Elkhart Superior Court, where a trial was had before a jury, resulting in a verdict and judgment in favor of appellee.

Appellant's motion for a new trial was overruled, and error is here assigned on that ruling. Appellant, in support of his motion for a new trial, insists that the verdict is not sustained by the evidence and is contrary to law. He also insists that the court erred in giving and in refusing to give certain instructions to the jury, and in admitting certain evidence.

It is the theory of appellant that the evidence clearly failed to show an express contract between decedent and appellee to pay for such services. On appeal the presumption is in favor of the proceedings and judgment of the trial court, and where the evidence is challenged, as being insufficient to support the verdict, such contention will be sustained only if after a consideration of all the evidence most favorable to the verdict there remains an essential element unsupported by any evidence. *Southern Ind. R. Co.* v. *Baker* (1906), 37 Ind. App. 405; *Knoefel* v. *Atkins* (1907), 40 Ind. App. 428; *Jeffries* v. *Orndorf* (1909), 44 Ind. App. 225; *Ohio Valley Buggy Co.* v. *Anderson Forging Co.* (1907), 168 Ind. 593.

It appears that in August, 1895, the husband of decedent died, leaving decedent, this claimant, a daughter, and one

son, all of whom resided and continued to reside in the family dwelling until the year 1900, when the son married and left the mother and claimant in charge of the farm. Soon after the death of the father, a third person offered the daughter a position, which she refused, at the request of the mother, the latter saying: "She [the daughter] must stay with me, and she will be paid; I cannot stay alone; John is at home, but he will not stay with me at night." To this request of the mother, claimant replied that if she wanted her to stay and claimant could have her pay, she would stay. Decedent many times afterward, and within a few months before her death, in the presence of claimant, said to third persons that her daughter should be well paid for her services. In view of the evidence to which we have referred, the jury might reasonably have concluded that the mother fully expected claimant to be paid for her services, and that claimant rendered the services for which claim is made expecting to be paid therefor. Claimant remained with her mother until the latter's death, and there is an abundance of evidence in the record to show that decedent, for at least two years prior to her death, required a great amount of care and attention, which, together with other work, was well performed by claimant. At the time of the trial—January 22, 1908—claimant was forty-four years of age. Decedent died at the age of seventy-five from the effects of cancer so located on her person that she was unable to dress and treat it herself, and this service was performed by claimant. While there is evidence in the record of admissions on the part of claimant which might

3. reasonably indicate that she was not expecting pay for the services rendered her mother, yet these alleged admissions are not such as will authorize this court to affirm that there is no evidence to support the necessary undertaking or justify the inference that compensation was not intended and expected.

The evidence before us is entirely different from that in

the cases of *McClure* v. *Lenz* (1907), 40 Ind. App. 56, *Waechter* v. *Walters* (1908), 41 Ind. App. 408, and

4.   *Schutts* v. *Franke* (1908), 42 Ind. App. 275, where the evidence clearly showed that the services performed by the child for the parent were not from any expectation of financial benefit, but from a motive of love for the parent.

Appellant insists that instructions two, three, four and five, given by the court to the jury, were all erroneous and harmful.   That part of instruction two claimed to

5.   be erroneous reads as follows: "If you find that the services were rendered as alleged, in order that there may be an obligation to pay wages for them, there must have been either an express promise by decedent to pay for them or they must have been rendered under such circumstances as that the law will imply such an obligation."

This instruction was followed by instruction three, which defined an implied obligation as between strangers, and continued as follows: "But where the person rendering services and the person for whom they are rendered are members of a family living together as one household, and the service appertains to such condition, an implication of a promise on the part of the recipient to pay for the services does not arise from the mere rendition and acceptance thereof, but the services will be presumed to be gratuitous and to be bestowed and rendered in the performance of duty or the manifestation of kindly regard for which remuneration was not contemplated; and to support a recovery therefor, the burden will be on the plaintiff to show either an express contract for compensation, or such circumstances of the services as will overcome the presumption of the law that they were gratuitous, and to show that it was the intention and understanding of the parties that the services were to be paid for.   So in this cause, if you find that plaintiff herein resided with her mother, and that she and her mother constituted one household, any services which plaintiff may have rendered for her mother, which apper-

tain to such condition, are presumed to have been rendered gratuitously, and on account of the relation of the parties and the condition in which they lived; and before plaintiff can recover in this case she must show such circumstances as will overcome this presumption, and make it appear that it was the understanding between her and her mother that the services were to paid for.''

The question as presented for our decision is ordinarily a mixed one of law and fact, and is finally settled by 6. the jury, unless misguided by the law given to them by the court.

Considering said instructions together, the jury must have understood that the burden was on plaintiff to prove facts and circumstances which would overcome the presumption of law that her services were rendered gratuitously, or because of family relations, and that she must prove an express contract, or such facts and circumstances that an agreement to pay for the services in question may be inferred, and that such services were rendered by her in expectation of payment therefor. Our conclusion regarding the controlling principles announced in these instructions is not without the rule in the case of *James* v. *Gillen* (1892), 3 Ind. App. 472, where it is said: ''Upon this principle it is universally held in all cases where the family relation exists, whether natural or assumed, in the absence of an express agreement or circumstances from which an agreement may be fairly inferred, that no promise will be created by implication of law to pay for services upon one hand or for support upon the other. This rule of law has its foundation in the theory that the relation repels the legal inference of contract rather than in an implied understanding that the services should compensate, and be compensated by the maintenance.'' The questioned instructions are supported by the following decisions: *Smith* v. *Denman* (1874), 48 Ind. 65; *Hill* v. *Hill* (1889), 121 Ind.

255; *Jessup* v. *Jessup* (1897), 17 Ind. App. 177; *Van Hook* v. *Young* (1902), 29 Ind. App. 471; *Fuller* v. *Fuller's Estate* (1898), 21 Ind. App. 42; *Ellis* v. *Baird* (1903), 31 Ind. App. 295; *Williams* v. *Resener* (1900), 25 Ind. App. 132.

Instruction four is questioned on the ground that it deals exclusively with the statements made by decedent, regarding payment for claimant's services, and introduced in evidence by plaintiff, without taking into account such statements proved by defendant, and because these statements were made to apply only to the question of an implied contract. The effect of this instruction was to confine the jury to the statements of decedent made in the presence and to the knowledge of claimant, which were introduced in evidence by plaintiff, and to limit the force of such statements to the question whether there was an understanding between plaintiff and her mother that such services were to be paid for. The instruction, in substance, also told the jury that if they should find that there was an agreement between the parties, whereby plaintiff was to be compensated for her services, still plaintiff could not recover if, after considering all of the evidence in the case, they should find that such services were paid for or otherwise remunerated. Our attention has been called to certain evidence which it is claimed the court should have specially noticed in this instruction. We have carefully read all of this evidence, and it was material as tending to show that plaintiff performed the particular services without any expectation of receiving pay therefor, or that such services were voluntarily rendered as a member of a family. The law covering this subject was fully and sufficiently covered by instruction three. We are not convinced that appellant was harmed by the action of the court in specially mentioning and limiting certain evidence introduced by plaintiff, and leaving evidence of like character, claimed to have been introduced by defendant, unqualified and un-

limited; nor can we conclude from this instruction that the jury understood that they were to ignore or disregard the statements made by decedent as proved by appellant.

Instruction five was on the subject of the measure of damages in case of a finding for plaintiff. The jury were admonished to take into account any benefits claimant may have received from her mother, and any use she may have made of her mother's farm for her own benefit or profit during the time she and her mother lived together, "and all other facts and circumstances in evidence which can aid in determining such reasonable value." A set-off was not pleaded, but from the evidence it appears that claimant owned and kept on her mother's farm, certain cows, hogs and other stock, which she looked after in connection with the stock owned by her mother. In view of this evidence it was not improper for the jury to consider the fact, if it be a fact, that claimant was employed a part of the time in a service from which she derived a benefit, but it will not do to say that the instruction was erroneous because of such facts, or to say that it justified the conclusive inference that the two women lived together under a partnership arrangement, as claimed by appellant. The weight of this evidence was for the jury, and was important as throwing light upon the question whether there was a contract between mother and daughter, and appellant was not, by this instruction, deprived of its benefit.

There was no error in refusing to give the instruction asked by appellant, for the reason that the instructions given by the court fully covered all of the material propositions of law stated in the one refused.

It is also insisted that the verdict is contrary to law. As we have seen, there was evidence to support the verdict, which was within the issues. It therefore follows that the verdict was not contrary to law.

Over the objection of appellant, the court permitted a witness, who was a physician, to testify that while at the

home of Elizabeth Miller, upon an occasion when professionally calling upon her, she said to him, in the presence of claimant, that Ellen should be paid and well paid for the work she was doing in caring for her. Decedent was at that time able to be up and around, and this conversation occurred in the sitting-room of her home. The objection urged against the admission of this evidence was that the communication was privileged, being a communication from a patient to her physician. It does not appear that decedent's statement to the witness was in any manner connected with the making of any examination of the patient, or with any conversation with reference to the ailments or disease with which the patient was suffering, or for which she was being treated, or in any manner pertained to such physician's employment, or that it was made while any one was advising claimant as to the care and attention the mother should receive.

All persons are competent witnesses in a civil proceeding except as otherwise provided by statute. Section 520 Burns 1908, §497 R. S. 1881, provides that "physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases" are not competent witnesses.

Such matters are regarded as confidential communications between patient and physician, and are privileged except with the consent of the patient. The fact about which the witness testified was not a matter reasonably within the professional business of the physician, or about which he would be expected to give advice, or that would likely be communicated by a patient to a physician as such. In the case of *Edington* v. *Aetna Life Ins. Co.* (1879), 77 N. Y. 564, the court had under consideration the admission of testimony, where a New York statute, very similar to the one under consideration, was called in review, and it was there held that the statute should not be made broader by construction than its language requires. In that

case it was said: "Before information can be excluded under this statute, it must appear that it was such as the physician acquired in some way while professionally attending a patient; and it must also be such as was necessary to enable him to prescribe as a physician, or to do some act as a surgeon. It is not sufficient to authorize the exclusion that the physician acquired the information while attending his patient; but it must be the necessary information mentioned. If the physician has acquired any information which was not necessary to enable him to prescribe, or to act as a surgeon, such information he can be compelled to disclose, although he acquired it while attending the patient; and before the exclusion is authorized, the facts must in some way appear upon which such exclusion can be justified."

In the case of *Haughton* v. *Aetna Life Ins. Co.* (1905), 165 Ind. 32, it is said: "The statute only forbids the physician from making public matter concerning his patient communicated to or learned by him, as such, through his professional relation."

In the case of *Bower* v. *Bower* (1895), 142 Ind. 194, 201, the court, in speaking of the statute to which we have referred, said: "He [the physician] did not expose or divulge any evidence, the knowledge of which he had acquired through professional relations with the testator. While it is true that the rule which forbids a physician to disclose in evidence matters communicated to him in the course of his profession is a salutary one, nevertheless it cannot be extended beyond its evident letter and spirit." See, also, *Herrington* v. *Winn* (1891), 60 Hun 235.

Having considered all of the questions presented by appellant, and being impressed with the view that a fair and impartial trial was had, and that no error intervened, the judgment is therefore affirmed.