WAINWRIGHT TRUST CO., ADMINISTRATOR, v. KINDER.

[No. 9,652. Filed October 18, 1918. Rehearing denied December 20, 1918.]

1. WORK AND LABOR.—Services Rendered Parent by Adult Child.—Compensation.—Implied Contract.—Where an adult child lives with the parent and renders services, the intention to pay for such services and the expectation of compensation may be inferred from conduct and circumstances, as well as from direct communications between them. p. 95.

2. WORK AND LABOR.—Services Rendered Parent by Adult Child.—Compensation.—Implied Contract.—Elements.—Where an adult child lived in the father's home and rendered services for him, the

elements of intention to pay and the expectation of compensation must be found to exist to warrant the finding of an implied obligation on the part of the parent to pay for such services, but such elements, like other ultimate facts, may be inferred from the relation and situation of the parties, the nature and character of the services rendered, and any other pertinent circumstances. p. 96.

3. WORK AND LABOR.—*Services Rendered Parent by Adult Child.— Compensation.—Implied Contract.*—The right and justice of a claim for compensation for services rendered by an adult child living with a parent, or the wrong and injustice, if any, attending such a. claim, may be considered only as an aid in ascertaining the intention and expectation of the parties as to compensation. p. 96.

4. APPEAL.—*Review.—Question of Fact.*—In an action by an adult child against the estate of her father for services rendered him while living with him as housekeeper and caring for him while an invalid, plaintiff predicating her cause of action on an implied contract, it was for the trial court to determine whether the facts and circumstances were sufficient to rebut the presumption that the services were rendered gratuitously, there being evidence that the father intended that the daughter be compensated. p. 100.

5. APPEAL.—*Review.—Evidence.—Sufficiency.—Scope of Review.— Weighing Evidence.*—In determining the sufficiency of the evidence to sustain' the finding of the trial court, the court on appeal will consider only the evidence most favorable to appellee, and cannot weigh conflicting evidence, or draw inferences from the evidence differing materially from those drawn by the trial court if there is any evidence warranting such inferences. p. 100.

From Hamilton Circuit Court; *Ernest E. Cloe,* Judge.

Action by Martha A. Kinder against the Wainwright Trust Company, administrator of the estate of Benjamin F. Kinder, deceased. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Gentry & Campbell, Christian & Christian* and *Ralph A. Waltz,* for appellant.

*Shirts & Fertig,* for appellee.

FELT, P. J.—Appellee, Martha A. Kinder, filed her claim for services rendered her father, Benjamin F. Kinder, in his lifetime. Appellant, Wainwright Trust Company, administrator with the will annexed of the estate of Benjamin F. Kinder, deceased, thereupon filed a counterclaim based upon the promissory note of appellee, payable to her father, to which appellee replied, admitting the execution of the note, but denying that the claim involved in this controversy was settled at the time the note was so executed, and that such note represented the net balance due the decedent after such settlement, as asserted by appellant. The case was tried by the court without a jury, and a finding made in appellee's favor, for the net amount of $1,365.18.

Appellant's motion for a new trial was overruled, and the trial court allowed appellee's claim in the sum aforesaid, and adjudged the costs of suit against the estate.

The error assigned and relied on by appellant is based on the action of the court in overruling the motion for a new trial.

The reasons assigned for a new trial are that: (1) The amount of the recovery is erroneous, being too large; (2) the decision of the court is not sustained by sufficient evidence; (3) the decision is contrary to law.

Appellee's claim was for services as housekeeper, for board, nursing, care and work in the garden as follows:

From February 24, 1896, to October 30,
1896, at $3 per week................ $102
From November 7, 1900, to November
7, 1911, at $3 per week............. 1,560

For same work, 52 weeks at $5 per
  week ............................... 260
From November 7, 1911, to November
  18, 1915, at $15 per week............ 3,120

Total amount claimed...............$5,042

Credits for board at $5.25 per
  week ......................$741.75
Credit by note................ 600
Credit by milk from cows 2 years 100
  Total credits................  $1,441.75
    Balance ........................$3,600.25

Appellant, in effect, though not directly, asserts
that the undisputed evidence shows that appellee and
her father lived together as members of one house-
hold under such circumstances as to preclude a recov-
ery in the absence of a promise to pay on the part of
the decedent, and that there is no evidence tending
to prove an express promise, or authorizing the in-
ference of an implied promise, to pay appellee for
her services. The other suggestions made by appel-
lant present only phases of the same general prop-
osition.

Appellee does not rely upon a definite, express
promise of the decedent to pay her for the services
rendered, but contends that they were rendered under
such circumstances that she had the right to expect
pay therefor, and to show that the decedent intended
that she should be paid the fair and reasonable value
of such services; that the facts fully warrant the find-
ing of an implied obligation to pay, and the trial
court having made such finding, the same is conclu-

sive and cannot rightfully be set aside by this court on appeal.

The evidence tends to show that during the time for which appellee claims compensation, she and her son lived with her father on his farm and that no other persons resided there; that he was a feeble old man most of the time and for many years preceding his death; that about three years prior thereto he suffered a stroke of paralysis, and from that time on grew more feeble and required more nursing, care and attention until his death in 1915; that he had difficulty in talking, was very nervous, had attacks of indigestion, was confined to his bed a part of the time, was treated by a physician frequently, and at other times was able to walk about; that during all of that time appellee did the house work and other work about the home, looked after her father's needs, helped him at the table by placing his food on his plate and in other ways, called the doctor, nursed him when sick, and rendered such services generally as he needed and desired to make him comfortable; that she was kind and cheerful and attentive to her father's needs and to her household duties; that they had some business transactions relating to notes held by the deceased other than the one involved in this suit; that the latter note was executed on March 1, 1915, due in one year from date, and was given in payment for some corn, hay, rent and the renewal of some small notes held by decedent against appellee, but had nothing to do with the taking care of the deceased.

John Hinsley, with whom the deceased did banking, testified that the old gentleman often commented on the pleasantness of his home; said he was glad to

have Martha live with him; that he talked about changing his will and naming another executor, so that he would be sure Martha was taken care of; that he thereafter made such change, and named him as such executor, but he moved away before the decedent died and did not qualify. There was other testimony to the effect that decedent said his daughter Martha would be taken care of for her services.

There is much evidence relating to the kinds of service rendered by appellee, her care, attention and nursing of her father, his enfeebled condition and declining health, his recognized need and appreciation of the services rendered by appellee, the value of such services, the manner of living and relations of the parties and of business transactions between them.

Many of the expressions of the deceased and some of the conduct of the parties are subject to different interpretations by reasonable minds.

The evidence is not sharply conflicting as to facts, but the parties differ widely in their interpretation thereof, and as to the inferences that may reasonably be drawn therefrom. They do not differ essentially as to the general propositions of law involved, but, in applying the same to the issues and facts of the case, reach conclusions that are directly and irreconcilably opposed to each other.

Both appellant and appellee cite and rely upon many of the same cases, and especially the decision in *Crampton* v. *Logan* (1901), 28 Ind. App. 405, 63 N. E. 51. In its material facts and issues the case is similar to the one at bar. There is no controversy over the proposition that the relation of the parties and their manner of living was such as to preclude a recovery by appellee, unless the evidence warranted

the trial court in inferring therefrom an implied contract to pay. In the case above mentioned the court states that: ''The fact that the services were rendered without express contract while the parties were members of a family living together as a household, it is sometimes said, rebuts the presumption or implication that compensation was intended for the accepted services, and raises a presumption that they were gratuitous, which may be rebutted by proof of circumstances such as justify an inference that compensation was intended. Or it may properly be said that for the services of the member of the family the law will not, as in ordinary like cases of requested or accepted services, raise an implied promise to pay; but recovery therefor may be had upon proof either of an express contract, the terms of which will control, or of an implied contract; and that to establish an implied contract, the evidence must show circumstances of such potency as to overcome the *prima facie* presumption that the services were rendered gratuitously. \* \* \*, for the recovery of compensation for services rendered by a member of a family, as in all other cases of recovery for services, a contract must be shown, either express or implied; and if the circumstances authorized the person rendering the services reasonably to expect payment therefor, by way of furtherance of the intention of the parties, or because reason and justice require compensation, the law will imply a contract therefor.''

The better reason, and the decided weight of authority in this state, is in harmony with the law as above stated, though there are decisions in this state which are not in entire harmony with the doctrine as above announced, and which place some

restrictions on the application of the doctrine of implied contracts as applied to cases like the one at bar.

Such cases emphasize the idea that there can be no implied contract unless the evidence clearly shows an intention on the part of the one for whom the services were rendered to pay for the same, and the claimant rendered the services in expectation of payment, rather than from any other or higher motive growing out of the relation of the parties, and, furthermore, that such intention shall appear by something said by the one for whom the services were rendered, to the party rendering the same, or that it must affirmatively appear that such statements were communicated to and acted upon by the one rendering the services, in expectation of compensation.

There can be no doubt that such a showing would be sufficient to warrant the finding of an implied obligation to pay, but, under the law as generally announced by text-writers and the great majority of decisions, such obligation may properly be inferred from facts, circumstances and the relations of the parties that do not meet all the requirements of such restricted rule. The intention to pay and the expectation of compensation may be inferred from conduct where equity and justice require compensation, as well as from direct communications between the parties, or communications through other persons representing them. The cases which restrict the rule, as above indicated, seem to overlook or ignore the very obvious fact that expectation of compensation may coexist with higher motives prompted by affection or the sense of duty, and that

the existence of the latter does not necessarily exclude the idea of pecuniary compensation.

As already indicated, appellee relies wholly upon an implied contract. To warrant the finding of such contract, the elements of intention to pay on 2. the one hand and expectation of compensation on the other must be found to exist; but such elements, like other ultimate facts, may be inferred from the relation and situation of the parties, the nature and character of the services rendered, and any other facts or circumstances which may reasonably be said to throw any light upon the question at issue.

The right and justice of the claim for compensation, or the wrong and injustice, if any, attending such claim, may be considered, but only as 3. tending to aid in ascertaining the intention and expectation of the parties in relation to the question of compensation for the services in controversy. 9 Cyc 242, 243.

The following cases have in some measure announced or applied the rule with restrictions, as above indicated, on the subject of implied contracts. *Brown* v. *Yaryan* (1881), 74 Ind. 305, 309; *McClure* v. *Lenz* (1906), 40 Ind. App. 56, 60, 80 N. E. 988; *Waechter* v. *Walters* (1908), 41 Ind. App. 408, 410, 84 N. E. 22; *Shutts* v. *Franke* (1908), 42 Ind. App. 275, 276, 85 N. E. 781.

The doctrine announced and followed in this opinion has generally prevailed in this state, and has been followed in earlier and later decisions than the ones above mentioned.

In *Adams* v. *Adams' Admr.* (1884), 23 Ind. 50, 53, it is said: "It is a general rule that where a child

continues with the parent after becoming of age, no express contract for wages being shown, the presumption is, no wages are to be paid. But a contract to pay a reasonable compensation may be inferred from circumstances tending to rebut the presumption that there is to be no compensation.''

In *Hays* v. *McConnell* (1873), 42 Ind. 285, 286, the court quoted with approval the following: '' 'It is not pretended in this case, that any express contract for services was ever made. If a right to an allowance for services exists, it must rest only on an implied contract or promise to pay. It is said by one learned jurist, ''that an implied contract or promise is inferred from the conduct, situation or mutual relations of the parties, and is enforced by the law on the ground of justice.'' And this language is used by Chief Justice Marshall in 12 Wheaton, 341: ''a great mass of human transactions depends upon implied contracts; upon contracts which are not written, but which grow out of the acts of the parties. In such cases, the parties are supposed to have made those stipulations which, as honest, fair and just men, they ought to have made.' ''

In *Hill* v. *Hill* (1889), 121 Ind. 255, 260, 23 N. E. 87, 89, the Supreme Court, in speaking of the presumption that is indulged as to persons living as members of the same family, said: ''This presumption may be rebutted by an express contract to pay, and a recovery may be had upon the contract, or it may be rebutted by facts and circumstances which exclude the intention on the part of such persons that the thing furnished or services rendered were gratuitous, and raise an inference that compensation was intended, and in justice and fairness under the circum-

stances they ought to have made a contract to pay; under such circumstances the law will imply a contract and require payment. * * * 'An implied contract is a matter of inference and deduction to be drawn from the circumstances surrounding the case. In this case you are to consider from the evidence the situation, conduct, the relation of the parties, and all the circumstances surrounding this case in determining whether an implied contract existed between the parties,' and the court held that such instruction was proper.''

In *Story* v. *Story* (1890), 1 Ind. App. 284, 288, 27 N. E. 573, 575, this court said: ''We think, however, that the instructions given by the court fully cover every proposition of law contained in those asked for and refused, unless it be that portion which seeks to impress upon the jury the view that they have no right to infer from the circumstances surrounding the case and the parties, that there was an undertaking to pay for the services, but that there must be direct proof of the contract itself, which portion we think is not good law, and was therefore properly rejected.''

In *McCormick, Exr.,* v. *McCormick* (1891), 1 Ind. App. 594, 596, 28 N. E. 122, this court said: ''Where in equity and good conscience money is due for services, the law implies a promise to pay therefor. It is not necessary that the parties should state to each other their understanding that compensation is to be made for the services; nor is it necessary that there should be an understanding that any definite amount shall be paid.

''No precise rule can be stated as to what circum-

stances will raise an implied contract to pay for services rendered by an adult person for his parent.''

Among the decisions announcing or applying the rule stated and followed in this opinion are the following: *House* v. *House* (1854), 6 Ind. 60, 61; *Wallace, Admr.,* v. *Long, Gdn.* (1886), 105 Ind. 522, 531, 5 N. E. 666, 55 Am. Rep. 222; *Cauble* v. *Ryman* (1866), 26 Ind. 207, 208; *King's Admr.* v. *Kelly* (1867), 28 Ind. 89, 90; *Wright, Admr.,* v. *McLarinan* (1883), 92 Ind. 103, 105; *Schoonover, Exr.,* v. *Vachon* (1889), 121 Ind. 3, 5, 22 N. E. 777; *Hill* v *Hill, supra; Story* v. *Story, supra; McCormick, Exr.,* v. *McCormick, supra; James* v. *Gillen* (1891), 3 Ind. App. 472, 476, 30 N. E. 7; *Knight, Admr.,* v. *Knight* (1893), 6 Ind. App. 268, 282, 33 N. E. 456; *Jessup* v. *Jessup, Admr.* (1897), 17 Ind. App. 177, 185, 46 N. E. 550; *Niehaus* v. *Cooper, Admr.* (1899), 22 Ind. App. 610, 616, 52 N. E. 761; *Williams* v. *Resener, Admr.* (1900), 25 Ind. App. 132, 134, 56 N. E. 857; *Crampton* v. *Logan, supra; Ellis* v. *Baird* (1903), 31 Ind. App. 295, 299, 67 N. E. 960; *Irwin* v. *Jones* (1910), 46 Ind. App. 588, 592, 92 N. E. 787; *Eppert* v. *Gardner* (1911), 48 Ind. App. 188, 192, 93 N. E. 550, and cases cited; *Miller* v. *Miller* (1911), 47 Ind. App. 239, 244, 94 N. E. 243, and cases cited; *Kirklin* v. *Clark* (1913), 53 Ind. App. 358, 365, 101 N. E. 753; *Gifford* v. *Gifford* (1915), 58 Ind. App. 665, 681, 107 N. E. 308.

Whatever diversity of opinion may heretofore have existed in regard to the rule of implied contracts, or its application to cases of this kind, we regard the rule and its application settled in conformity with the view expressed in this opinion, and cases which recognize or apply a contrary or modified rule can no longer be regarded as authority in this state.

In this case it was a question for the trial court to determine from the evidence whether the
4.    facts and circumstances shown thereby were sufficient to rebut the presumption that the services of appellee were rendered gratuitously.

In deciding the question of the sufficiency of the evidence to sustain the finding of the trial court, we are to consider the evidence most favorable to
5.    appellee, and this court has no right or power to weigh conflicting evidence, or to draw inferences from the evidence differing materially from those drawn by the trial court, if there is any evidence to sustain the finding or warrant the inferences drawn from the evidence by such court.

The trial court having in this case inferred, from the facts and circumstances shown by the evidence, an implied agreement on the part of the decedent to pay the fair and reasonable value of the services rendered by appellee, and there being some evidence from which such agreement may be inferred, this court would not be warranted in holding that the decision is not sustained by sufficient evidence or that it is contrary to law.

The other suggestions made by appellant do not affect the merits of the case.

Judgment affirmed.

Caldwell, C. J., Ibach, Hottel and Batman, JJ., concur.

Dausman, J., dissents.